**James Andrew REED, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–03–00942–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 27, 2005.

James F. Keegan, Houston, for appellant.

Eric Charles Carcerano, Anahuac, for appellee.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Appellant James Andrew Reed challenges the legal and factual sufficiency of the evidence supporting his conviction for possession of codeine with intent to deliver and the trial court's ruling on his objections to the State's chain of custody evidence. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Officer Matt Ashby stopped appellant and his uncle, Felix Reed, for speeding on Interstate 10 outside of Houston. During the stop, Ashby, an officer with the Chambers County Narcotics Task Force, became suspicious that illegal activity may have occurred and requested permission to search the vehicle. Ashby received permission from Felix, the vehicle's owner, and discovered a Gatorade bottle in the trunk, which he believed contained liquid codeine.

After appellant and Felix were placed in custody and read their *Miranda* rights, Felix denied the codeine belonged to him. Appellant then told Ashby that he knew the codeine was in the trunk and he had placed it there. Appellant was charged with possession of codeine with intent to deliver. A jury convicted appellant and the court assessed punishment at 16 years'

confinement and a $1,000 fine. This appeal ensued.

## II. ISSUES ON APPEAL

In appellant's issues one through five, appellant contends the evidence is: (1) factually insufficient to prove he intentionally or knowingly possessed the codeine; (2) and (3) legally and factually insufficient to prove he intentionally or knowingly possessed the codeine with the intent to deliver; (4) and (5) legally and factually insufficient to prove the codeine is Penalty Group 4 codeine. In issues six through eight, appellant argues the trial court erred in overruling his chain-of-custody objections.

## III. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

#### 1. Standard of Review

In a legal sufficiency review, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). When conducting our review, we do not reweigh the evidence or substitute our judgment for that of the fact finder. *Id.; Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App.1998). We will affirm the decision if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App. 1997).

When conducting a factual sufficiency review, we review the evidence in a neutral light. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004). If the evidence supporting the verdict, taken alone, is too weak to sustain a finding of guilt beyond a reasonable doubt, or contrary evidence is

so strong that the State could not have met its burden of proof beyond a reasonable doubt, the verdict must be set aside. *Id.* at 484—85. However, when reviewing the evidence, we must be deferential to the jury's findings and resist intruding on the fact finder's role as the sole judge of the weight and credibility of the evidence. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000). Whether the evidence is direct or circumstantial, these standards of review remain the same. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986).

## 2. Possession

In his first issue, appellant contends the evidence is factually insufficient to prove he intentionally or knowingly possessed the codeine. Appellant argues that, absent the admissions he made to Ashby, the evidence would have been insufficient to prove beyond a reasonable doubt he intentionally or knowingly possessed the codeine. Further, appellant asserts that the admissions he made at the time of his arrest were unsworn and should be afforded less weight than his sworn testimony at trial.

▆▆▆ To establish possession of a controlled substance, the State must prove appellant knew that what he possessed was contraband and that he exercised care, control, and management over the contraband. *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App.1995); *Abdel–Sater v. State,* 852 S.W.2d 671, 675 (Tex.App.-

Houston [14th Dist.] 1993, pet. ref'd). When an accused is not in exclusive control of the place where the contraband is found, additional evidence or circumstances must affirmatively link the accused to the contraband. *Brown,* 911 S.W.2d at 747; *Wootton v. State,* 132 S.W.3d 80, 86—87 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). The affirmative links can be established by additional facts and circumstances which raise a reasonable inference of the accused's knowledge and control of the contraband, establishing the affirmative links.[1] *Puente v. State,* 888 S.W.2d 521, 526 (Tex.App.-San Antonio 1994, no pet.). The number of factors present is not as important as the significance of those factors in establishing the elements of the crime. *See Gilbert v. State,* 874 S.W.2d 290, 298 (Tex.App.-Houston [1 Dist.] 1994, pet. ref'd) (stating the number of factors present is less important than the strength of the factors in establishing the elements of the crime). Further, the links need not be so strong as to rule out every other possibility except the defendant's guilt. *Brown,* 911 S.W.2d at 748; *Wootton,* 132 S.W.3d at 87.

▆▆▆ Here, appellant's statements to Ashby provide the strongest affirmative link. After Ashby discovered the codeine and read appellant his *Miranda* rights, Ashby asked appellant whether he knew the codeine was in the vehicle and appellant replied, "yes." When Ashby asked

---

1. Factors that may establish the affirmative links include whether: (1) the contraband was in plain view; (2) the contraband was accessible to the accused; (3) the accused was the owner of the place where the contraband was found; (4) the accused was the driver of the automobile in which the contraband was found; (5) the contraband was found on the same side of the vehicle seat as the accused was sitting; (6) the contraband was found in an enclosed place; (7) the odor of drugs was present; (8) paraphernalia to use the contraband was in view of or found on the accused; (9) conduct by the accused indicated a consciousness of guilt; (10) the accused had a special connection to the contraband; (11) occupants of the vehicle gave conflicting statements about relevant matters; (12) the accused appeared to be under the influence of drugs; and (13) affirmative statements connected the accused to the contraband. *Gilbert v. State,* 874 S.W.2d 290, 298 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd).

him if he had placed the codeine in the vehicle, appellant again replied, "yes." Thus, appellant unequivocally admitted to Ashby that he knew the codeine was in the vehicle and that he had placed it there. In addition, appellant was driving the vehicle in which the contraband was found and there was testimony that both he and Felix appeared nervous when Ashby approached the trunk during the search, "put[ting] their heads down to the ground as if they were caught." This evidence is sufficient to affirmatively link appellant to the codeine and support the jury's possession finding. *See Gilbert*, 874 S.W.2d at 298.

■ At trial, appellant testified that he had lied to Ashby when making the admissions in order to help his uncle. Appellant argues the conviction was against the great weight and preponderance of the evidence, in part, because he changed his testimony at trial testifying truthfully under oath. Appellant suggests his argument is supported by evidence that Felix was on parole for a prior narcotics conviction, appellant's testimony that he lied in order to help Felix, and other evidence indicating Felix possessed the codeine.[2] However, as the ultimate arbiter of conflicting evidence, the jury was free to believe appellant told Ashby the truth at the time of his arrest and was not being truthful at trial. *See Herrero v. State*, 124 S.W.3d 827, 834 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (stating the jury alone judges the facts, the credibility of witnesses, and the weight to be given evidence). It was also within the jury's province to ignore any or all evidence relating to Felix. *Id.*

2. Appellant also points to the following evidence as indicating Felix possessed the codeine: Ashby testified that during the traffic stop Felix was visibly nervous; the vehicle in which the codeine was found belonged to

Viewing the evidence in a neutral light, the evidence supporting the conviction, when considered by itself, is not so weak that it does not support the verdict of guilt beyond a reasonable doubt, nor is the contrary evidence so strong that the State could not prove beyond a reasonable doubt that appellant possessed the codeine. *Zuniga*, 144 S.W.3d at 484—85. Accordingly, appellant's first issue is overruled.

### 3. Intent to Deliver

In his second and third issues, appellant challenges the legal and factual sufficiency of the evidence supporting the jury's finding that he possessed the codeine with intent to deliver.

#### a. Legal Sufficiency

■ In delivery or intent to deliver cases, direct evidence of intent is not required; intent may be proved by circumstantial evidence. *Moss v. State*, 850 S.W.2d 788, 797 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). Intent is a question of fact to be determined by the trier of fact and may be inferred from the acts, words, or conduct of the accused. *Puente*, 888 S.W.2d at 527. Additional factors that may be considered in determining intent include:

(1) the nature of the location of the defendant's arrest;

(2) the quantity of narcotics the defendant possessed;

(3) the manner of packaging of the narcotics;

(4) the presence or absence of drug paraphernalia (for use or sale);

Felix; and, in a search incident to the arrest, Ashby found $800 in cash on Felix's person. While the evidence may be probative of drug activity, it does not preclude the possibility that appellant possessed the codeine.

(5) whether the defendant possessed a large amount of cash in addition to the narcotics; and

(6) the defendant's status as a narcotics user.

*Williams v. State,* 902 S.W.2d 505, 507 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). Expert testimony may also be used to prove intent to deliver. *Bryant v. State,* 997 S.W.2d 673, 675 (Tex.App.-Texarkana 1999, no pet.).

■ Here, the jury's finding that appellant possessed the codeine with intent to deliver is supported by evidence of appellant's possession of a large amount of liquid codeine—4.94 kilograms—packaged in a large Gatorade bottle. Also, expert testimony from Officer Kenneth Weaver, a 19–year narcotics officer, established that liquid codeine is typically packaged in pint-sized bottles when diluted for distribution. Weaver further testified that the amount of codeine seized from appellant was typically not for personal use, but was for delivery to others. Viewing this evidence in the light most favorable to the verdict, we conclude a rational juror could have found beyond a reasonable doubt appellant possessed the codeine with intent to deliver. *See Williams,* 902 S.W.2d at 507—08; *Bryant,* 997 S.W.2d at 675. Accordingly, we overrule appellant's second issue.

### b. Factual Sufficiency

Regarding his factual sufficiency challenge, appellant states: "On cross-examination, Officer Weaver testified that he had never talked with appellant, did not know appellant, never talked with appellant about his plans, and that his testimony was based upon his own experience, and not upon any experience with appellant." Further, appellant argues that Weaver's testimony is insufficient to prove intent because appellant's "uncle may have intended to personally consume the codeine over a long period of time." These suppo-sitions do not, however, provide sufficient contrary proof to outweigh the jury's finding of guilt beyond a reasonable doubt. We conclude Officer Weaver's expert testimony sufficiently establishes intent to deliver. *See Mack v. State,* 859 S.W.2d 526, 529 (Tex.App.-Houston [1 Dist.] 1993, no pet.).

Appellant also suggests other evidence is potentially exculpatory. Specifically, appellant states that "he was not the owner of the Lincoln where the codeine was found; he was not recorded as he participated in a narcotics transaction; and that he had no weapon." However, these factors are not exclusive; they are merely some of the factors used to determine a defendant's intent to deliver. *See Williams,* 902 S.W.2d at 507. Viewing the evidence in a neutral light, we conclude the evidence is factually sufficient to prove appellant's intent to deliver the codeine. *Zuniga,* 144 S.W.3d at 484—85. Therefore, we overrule appellant's third issue.

### 4. Penalty Group 4 Codeine

In his fourth and fifth issues, appellant argues the evidence is legally and factually insufficient to prove the codeine was Penalty Group 4 codeine. Appellant contends that the trial testimony of Minh Nguyen, the Texas Department of Public Safety (DPS) chemist who analyzed the codeine, identified it as belonging to a different Penalty Group than did Nguyen's written lab report. Therefore, appellant claims the State did not prove he possessed Penalty Group 4 codeine.

### a. Legal Sufficiency

■ The indictment in this case charged appellant with possession with intent to deliver a controlled substance "in an amount of 400 grams or more, that contained not more than 200 milligrams of codeine per 100 milliliters or per 100

grams."[3] Accordingly, as an element of the crime, the State was required to prove beyond a reasonable doubt that the seized codeine was codeine described in Penalty Group 4. *See Ortiz v. State,* 999 S.W.2d 600, 603 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Minh Nguyen provided the only testimony regarding the chemical composition of the codeine. On direct-examination, Nguyen testified the codeine was pure and unmixed, weighing 4.94 kilograms. He also testified that the codeine fell within the Penalty Group 4 description.

On cross-examination, defense counsel attempted to impeach Nguyen with the lab report he had prepared after analyzing the codeine.[4] Nguyen's report stated the codeine was "not more than 1.8 grams of codeine or any salts per 100 milliliters of not more than 90 milligrams per dosage unit," which matches the description of Penalty Group 3 codeine.[5] On redirect, Nguyen testified that the Penalty Groups may overlap, that one substance could be "a subset of another." Nguyen stated on recross that he had not tested the codeine to determine whether it was not more than 200 milligrams of codeine per 100 milliliters or per 100 grams, which would establish the concentration for purposes of clas-sifying the codeine *only* in Penalty Group 4, and on further redirect-examination he testified that it is mathematically possible for the codeine seized to fall within both Penalty Groups 3 and 4. *See* Tex. Health & Safety Code Ann. §§ 481.104(a)(4), 481.105(1) (Vernon 2003).

Appellant argues that the discrepancy between Nguyen's written report and his trial testimony renders the evidence that the codeine was within Penalty Group 4 legally insufficient. Appellant cites *Dudley v. State* for the proposition that a conviction for Penalty Group 4 codeine cannot include codeine from another penalty group. 58 S.W.3d 296, 300 (Tex.App.-Beaumont 2001, no pet.). In dicta, the *Dudley* court rejected "any sort of favorable comparison between Penalty Group 4 'codeine,' as specifically defined, and Penalty Group 3 'codeine'" because the statutory descriptions contained "words of art" that do not appear to have identical meanings. *Id.* at 300 n. 6. Although *Dudley* is instructive in this case, it is not for the reasons asserted by appellant.

As in this case, the appellant in *Dudley* was convicted of possession of Penalty Group 4 codeine and contested the legal

---

3. Penalty Group 4 codeine is defined in the Texas Health and Safety Code as:
   (1) a compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone:
   not more than 200 milligrams of codeine per 100 milliliters or per 100 grams; ...
   Tex. Health & Safety Code Ann. § 481.105(1) (Vernon 2003).

4. Although the lab report was used during cross-examination, it was not offered into evidence by either party, and consequently, it is not in the record on appeal.

5. Penalty Group 3 codeine is defined as:

(4) a material, compound, mixture, or preparation containing limited quantities of the following narcotic drugs, or any of their salts:
   not more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with an equal or greater quantity of an isoquinoline alkaloid of opium;
   not more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts;
   ....
Tex. Health & Safety Code Ann. § 481.104(a)(4) (Vernon 2003).

sufficiency of the evidence regarding the quality of the codeine, claiming the State failed to prove he possessed codeine as specifically defined in Penalty Group 4. *Id.* at 297–98. The *Dudley* court agreed that this was the State's burden, but concluded the State proved the quality of the codeine with testimony from the chemist who had analyzed it. *Id.* at 299–300. In *Dudley,* even though the chemist did not specifically measure nor quantify the concentration of the codeine at issue, she did testify that the codeine was within the parameters of Penalty Group 4. *Id.* at 299. That testimony, supported by the chemist's lab report reflecting the same findings, was determined to be legally sufficient to support the conviction. *Id.* at 300–01. Thus, the *Dudley* court indicated a conviction may be based on chemical testing that does not specifically limit the contraband to only one penalty group. *Id.* at 302. (Gaultney, J. concurring).

Here, Nguyen repeatedly testified that the seized codeine was within Penalty Group 4. Although appellant attempted to impeach Nguyen with information from Nguyen's lab report that stated the codeine was not more than 1.8 grams of codeine or any salts per 100 milliliters, Nguyen explained to the jury that the notation quoted by appellant's attorney did not take the codeine out of Penalty Group 4. Although appellant's attorney suggested the lab report and Nguyen's testimony contradicted each other, Nguyen explained they did not.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could conclude from Nguyen's testimony that the codeine appellant possessed was Penalty Group 4

codeine. Accordingly, appellant's fourth issue is overruled.

### b. Factual Sufficiency

▮ Examining the evidence for factual sufficiency, we are not convinced that Nguyen's testimony was so weak or so greatly outweighed by contrary evidence that the beyond-a-reasonable-doubt standard could not be met. Even if the evidence may have been contradictory, "reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Mosley v. State,* 983 S.W.2d 249, 254 (Tex. Crim.App.1998); *see also Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim.App.1994) (stating the jury exclusively judges the credibility of witnesses and the weight to be given their testimony). We will not reverse a conviction merely because the jury resolved a conflict in evidence against appellant. *Herrero,* 124 S.W.3d at 834. Appellant's fifth issue is overruled.

### IV. Chain of Custody

In issues six, seven, and eight, appellant claims the trial court erred in overruling his chain of custody objections when the codeine was offered into evidence. Relying on *Moore v. State,* appellant argues that the "breach" in the chain of custody here was "neither minor nor theoretical." 821 S.W.2d 429, 431 (Tex.App.-Waco 1991, no pet.).[6] Appellant emphasizes that when Officer Terry Hughes delivered the box containing the bottle of codeine to the DPS lab, she did not remember to whom she gave the box, she did not personally give it to Minh Nguyen, and she did not see what became of the box after she gave it to the lab employee. Appellant suggests that because "no one knows what happened" to

6. In *Moore,* the Waco Court of Appeals stated, " 'minor theoretical breaches in the chain of custody' will not affect admissibility in absence of 'affirmative evidence of tampering or commingling.' " *Moore v. State,* 821 S.W.2d 429, 431 (Tex.App.-Waco 1991, no pet.) (quoting *Stone v. State,* 794 S.W.2d 868, 870 (Tex. App.-El Paso 1990, no pet.)).

the box from the time Hughes turned it over to the lab until Nguyen performed his analysis, "[t]he box could have been anywhere."

■■■■ The sufficiency of an evidentiary predicate is within the trial court's discretion, and we will affirm the judgment unless we find the trial court abused that discretion. *Smith v. State,* 683 S.W.2d 393, 405 (Tex.Crim.App.1984); *Foster v. State,* 101 S.W.3d 490, 498 (Tex.App.-Houston [1st Dist.] 2002, no pet.). If evidence is properly identified, questions concerning care and custody typically go to the weight, not the admissibility, of the evidence. *Foster,* 101 S.W.3d at 498.

■■■ Here, Officer Ashby identified the State's Exhibit 2 as the bottle he recovered from the vehicle appellant was driving. Ashby testified that he sealed the top of the bottle with evidence tape and, other than the tape being cut for analysis of the contents, there were no alterations to the bottle. Further, Ashby stated he placed the bottle inside a box that had the case number, appellant's name, the contents of the box, and Ashby's initials on it. Ashby identified the box at trial. Appellant did not object to Ashby's testimony.

Officer Hughes testified she retrieved the sealed box from the evidence lockbox and transported it to the lab for analysis. She stated the trip was uneventful, and when she arrived at the lab, the box was in the same condition as when she retrieved it. On cross-examination, Hughes testified she could not remember the lab employee to whom she had delivered the box.

Nguyen testified he did not know which lab employee received the box from Hughes, and appellant objected to this testimony on the basis that the chain of custody had not been established. The objection was overruled. Nguyen further

testified that he personally retrieved the sealed box—the same one identified by Ashby as the box in which he placed the bottle of codeine—from the evidence vault, the evidence tape was intact, and it had not been tampered with. Defense counsel again made a chain-of-custody objection, and the objection was again overruled. Counsel continued his chain-of-custody objections to each question asked of Nguyen regarding his analysis of the codeine, and the trial court overruled each of those objections.

■■■ To support the admission of evidence, the State must prove only the beginning and end of the chain of custody. *Caddell v. State,* 123 S.W.3d 722, 727 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd). The State is not required to provide a moment-by-moment account of the whereabouts of evidence from the instant it is seized until it is introduced at trial. *See Sneed v. State,* 875 S.W.2d 792, 794 (Tex. App.-Fort Worth 1994, no pet.) (stating that, barring any showing of tampering or alteration, tagging of evidence at the time of seizure and identifying the same item at trial based on the tag is sufficient for admission).[7]

Here, Ashby testified that the box offered at trial was the same box in which he had placed the bottle seized from the trunk of the vehicle. Nguyen identified the box as the one he retrieved from the evidence vault at the DPS lab, and stated the bottle had not been tampered with. This evidence is sufficient to establish the beginning and end of the chain of custody. *Caddell,* 123 S.W.3d at 727. We hold the trial court did not abuse its discretion in overruling appellant's chain-of-custody objections. *Smith,* 683 S.W.2d at 405. Ac-

7. Appellant made no claim of tampering or    alteration at trial and makes none on appeal.

cordingly, appellant's sixth, seventh, and eighth issues are overruled.

## V. Conclusion

In sum, we conclude the evidence was legally and factually sufficient to support appellant's conviction, and the trial court did not abuse its discretion in overruling appellant's objections to the State's chain of custody evidence. Accordingly, the judgment of the trial court is affirmed.