NO. 07-05-0133-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JANUARY 26, 2007

_____

RICHARD DEWAYNE SNELSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 16,447-B; HONORABLE JOHN BOARD, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Richard Dewayne Snelson appeals his felony conviction of possession of a controlled substance with intent to deliver within a drug-free zone, enhanced twice, and accompanying sentence of 60 years in the Texas Department of Criminal Justice Institutional Division. We will affirm.

By his six issues, appellant questions whether the evidence was legally and factually sufficient to demonstrate he had possession of a controlled substance and whether the

evidence was legally and factually sufficient to show he intended to deliver a controlled substance. When deciding whether evidence is legally sufficient to support a conviction, a reviewing court must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). When conducting a factual sufficiency review, we review the evidence in a neutral light. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). However, we must be deferential to the jury's findings and resist intruding on the fact finder's role as the sole judge of the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). When considering factual sufficiency of the evidence we must address the most important evidence that the appellant contends undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

To prove unlawful possession of a controlled substance, the State must prove that (1) the accused exercised control, management or care over the substance and (2) the accused knew the matter possessed was contraband. *Poindexter*, 153 S.W.3d at 405. Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).

However, presence or proximity, when combined with other evidence, either direct or circumstantial (i.e., "links"), may well be sufficient to establish that element beyond a reasonable doubt. *Id*. It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Id*. Possible links include: (1) whether the defendant was present when the drugs were found; (2) whether the drugs were in plain view; (3) whether the drugs were found in proximity to and accessible to the defendant; (4) whether the defendant was under the influence of drugs when arrested; (5) whether the defendant possessed other contraband or drug paraphernalia; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of drugs; (10) whether the defendant owned or had the right to possess the place where the drugs were found; (11) whether the place the drugs were found was enclosed; (12) the amount of drugs found; (13) whether the defendant possessed weapons; and (14) whether the defendant possessed a large amount of cash. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.–Dallas 2003, no pet.).

In delivery or intent to deliver cases, direct evidence of intent is not required. Intent may be proven by circumstantial evidence. *Reed v. State*, 158 S.W.3d 44, 48 (Tex.App.–Houston [14th Dist.] 2005, pet. ref'd). Intent is a question of fact and may be inferred from the acts, words or conduct of the accused. *Id.* Additional factors that may be considered in determining intent include: (1) the nature of the location of the defendant's arrest, (2) the quantity of narcotics the defendant possessed, (3) the manner of packaging the narcotics, (4) the presence or absence of drug paraphernalia (for use or

sale), (5) whether the defendant possessed a large amount of cash in addition to the narcotics, and (6) the defendant's status as a narcotics user. *Id*. at 48-49 (citing *Williams v. State*, 902 S.W.2d 505, 507 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd)). The control over the contraband need not be exclusive, but can be jointly exercised by more than one person. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985).

Evidence showed that, pursuant to a search warrant, law enforcement officers entered and searched a residence in Canyon, Texas. The search warrant was obtained because a confidential informant had notified law enforcement that marijuana was inside the residence. Testimony showed the individuals named in the warrant as having control over the premises being searched were Candace Baldwin and appellant. The residence was located in a drug-free zone.

When officers entered the residence, Dennis Waldron and Degan Kuykendall ran out the back door, but were apprehended. Officers found Baldwin and appellant in the southeast bedroom.[1] Baldwin was sitting on the bed and appellant was on the floor next to the bed.[2] After appellant and Baldwin were taken into custody, the southeast bedroom was searched. The officers discovered two baggies containing 1.57 grams of

---

[1] The residence contained two bedrooms, a southeast bedroom and a northeast bedroom. The northeast bedroom did not contain a bed and appeared to be used as a storage room.

[2] One officer testified appellant "appeared to have either slid off the edge of the bed or stepped off the bed and he had a hand and a knee almost on the ground and was kind of looking back at us."

methamphetamine on the floor.[3] Law enforcement officers testified that these two baggies were found within the "immediate reach" of where appellant was located at the time of entry. Based on the fact that the two baggies were found within his immediate reach, law enforcement officers testified that appellant could have placed the drugs on the floor. One officer testified that it would have been "impossible" for Baldwin to place the drugs on the floor where they were located after the police officers entered the southeast bedroom.

Officers also found a baggie with green shamrocks containing 0.35 grams of methamphetamine, which fell out of the front pocket of a pair of black jeans, located on the floor of the southeast bedroom. Those jeans were size 34 in the waist and size 32 in the length. The pant size appellant was wearing at the time of his arrest was size 34 in the waist and size 34 in the length. Testimony indicated that Baldwin could not have fit into the jeans and revealed the only person in the house at the time of the search who could have properly fit into the black jeans was appellant.

While searching the southeast bedroom, law enforcement officers also discovered numerous plastic baggies scattered on the bedroom floor. Glass pipes of the type used to inhale narcotics were found on the night stand and on the floor of the southeast bedroom. A makeup case was found on top of the dresser which contained finger scales, lighters, plastic baggies, and several glass pipes with burnt residue. One of the plastic baggies found inside the makeup case had the same green shamrocks which were on the

---

[3] The record demonstrates the southeast bedroom, along with the rest of the residence, was littered with trash. The officers were unable to testify whether the methamphetamine was found within their "plain view."

baggie containing the methamphetamine that came from the front pocket of the black jeans. In addition, the officers located a homemade water bong in a kitchen cabinet and a small baggie with white powder residue in the trash. Officers also found various sizes of baggies in the living room.

Kuykendall testified that he was smoking methamphetamine with appellant and Baldwin at the residence shortly before the police arrived. He stated that the three of them had been seated in the living room, passing around a glass pipe containing the methamphetamine. According to Kuykendall, the methamphetamine belonged to either appellant or Baldwin. Kuykendall further indicated that when the officers actually entered the residence, appellant and Baldwin were in another room for the purpose of reloading the pipe with methamphetamine. He supposed that appellant was the one loading the pipe because he "controlled the actions that went on in that house." Given the direction in which appellant and Baldwin had left the living room of the small house, Kuykendall believed they were reloading the glass pipe in either the bedroom or the bathroom. He said the pipe had been reloaded once or twice already during their use of it.

Some of the law enforcement officers who testified said drug dealers use empty baggies to package and sell drugs. The testifying officers supported their opinions that appellant was probably dealing in narcotics by referencing the fact the officers found: (1) baggies containing methamphetamine in the bedroom where appellant was located, (2) clean empty baggies often used to package and sell narcotics throughout the bedroom and living room, (3) glass pipes used to inhale narcotics throughout the bedroom, and (4) finger scales used to weigh narcotics for sale in the southeast bedroom.

6

Appellant called one witness at trial, his mother Gaye Snelson. She testified appellant had been living with his parents for four months but had been "staying" at Baldwin's house for about a week before his arrest.[4] She said he took changes of clothes to Baldwin's residence. She also indicated she typically did appellant's laundry, and he wore a size 34/34 pant and had never worn his pants two inches short. She admitted she was aware that appellant had used narcotics in the past.

It was the province of the jury to evaluate the credibility of the police officers and Kuykendall, and their prerogative to accept their accounts of events as true. *Taylor*, 106 S.W.3d at 832. Evidence appellant had just been smoking methamphetamine with Kuykendall and Baldwin supports the conclusion he knew the substance was contraband. The logical force of the evidence of his use of methamphetamine just before his arrest; his residence at the premises; his location in the southeast bedroom where the methamphetamine was located; the proximity of the substance within appellant's "immediate reach"; the testimony he or Baldwin was reloading the pipe prior to the officers' entry; the testimony, related to reloading the pipe, that he "controlled the actions" in the house; the presence of glass pipes, small baggies, and finger scales in the southeast bedroom; and the contraband found in the black jeans which, of the persons present, could most closely be associated with appellant supports the conclusion he exercised control, management or care over the substance. *See Brown*, 911 S.W.2d at 747 (accused's

---

[4] She also testified appellant was 35 years of age, and that he went to stay with Baldwin to help her, making reference to Baldwin's poor health. Evidence also showed that about a week prior to their arrest, appellant and Baldwin had informed a police officer that they resided at the address in Canyon where they were later arrested.

7

connection with the drugs was more than just fortuitous); *Taylor*, 106 S.W.3d at 831 (listing possible links).  Appellant's mother's testimony contrary to the jury's verdict primarily addressed the drugs found in the pocket of the black jeans, and in any event was not so strong as to overwhelm the evidence favoring the verdict.  *Sims*, 99 S.W.3d at 601.  The evidence was both legally and factually sufficient to show appellant possessed the illegal contraband. *Evans*, 202 S.W.3d 158; *Poindexter*, 153 S.W.3d at 405; *Johnson*, 23 S.W.3d at 7.

Whether appellant had intent to deliver also was a question of fact for the jury to resolve.  *Reed*, 158 S.W.3d at 48.  The jury could infer that intent from the testimony of the officers of the evidence found in the residence and Kuykendall's testimony regarding the drug use immediately prior to the officers' entry.  *See also id.* at 49 (officer's expert testimony established intent to deliver).

We conclude a rational trier of fact could have found beyond a reasonable doubt that appellant possessed methamphetamine with an intent to deliver.  *Poindexter*, 153 S.W.3d at 405; *Zuniga*, 144 S.W.3d at 484.  We therefore conclude the evidence is legally and factually sufficient to support the conviction, overrule appellant's issues and affirm the judgment of the trial court.

James T. Campbell<br>
Justice

Do not publish.