# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00727-CR

**Jason Rafie Nazari, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-09-202306, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Jason Rafie Nazari guilty of possession with intent to deliver a controlled substance, namely cocaine, in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2010). After finding that Nazari had been convicted of two previous felonies, the trial court sentenced him to eighteen years' imprisonment. Nazari appeals, asserting that the evidence is insufficient to sustain the jury's verdict regarding the elements of possession and intent to deliver. We affirm the trial court's judgment.

### BACKGROUND

On April 27, 2009, police officers executed a search warrant for the residence located at 941 East 49½ Street in Austin, Texas after the Austin Police Department received information that

Nazari, the alleged resident, was selling cocaine.[1]  At Nazari's trial on the resulting charge, the jury heard testimony from three Austin police officers involved in the search and an Austin Police Department chemist.

Detective Stephen Shafer testified that upon reaching the residence, the officers knocked on the door, announced their presence as police officers with a search warrant, and, after waiting fifteen to twenty seconds, breached the door.  Shafer, the first to enter the efficiency-style apartment, testified that the first thing he saw was a female in the apartment's living room.  He then found Nazari exiting the bathroom, which was connected to the living room through the kitchen.[2]

After they detained Nazari and the woman found in the living room, the officers searched the apartment for narcotics.  They found a plastic bag containing white powder floating in the toilet, later identified by an Austin Police Department chemist as 13.55 grams of powder cocaine.  According to Shafer, after finding the cocaine in the toilet, Shafer told Nazari that "it didn't all go down."  Nazari sighed in response.

During the search, police also discovered an Aleve bottle containing approximately twenty individual crack-cocaine rocks, amounting to 4.27 grams, on a window sill in the living room.  In the living room closet, police found a jar containing marijuana, an assortment of prescription pills, and a clear dish holding .95 grams of crack cocaine.  Another assortment of prescription pills was

---

[1]  The facts recited herein are taken from the testimony and exhibits admitted at trial.

[2]  When questioned, Shafer first stated that he encountered Nazari "coming out of the bathroom and the small kitchen area."  Testimony later clarified that Shafer in fact observed Nazari coming out of the bathroom itself.

found on the living room television stand. Shafer testified at trial that the amount of narcotics found in the apartment was consistent with dealing rather than individual use.

A Pyrex measuring cup and digital scale, both containing traces of a powder preliminarily identified as cocaine, were found in plain view on the kitchen counter along with two containers of baking soda. Shafer testified that the measuring cup, baking soda, and digital scale were tools used to manufacture crack cocaine.

In their search of the apartment, police also collected a small, red notebook containing a record of names and numbers. At trial, Shafer identified a page ripped from the book as a "tally sheet," a common method used to record the sale of crack cocaine. The numbers noted on the tally sheet, Shafer testified, are consistent with selling crack cocaine.[3]

The living room contained a photograph of Nazari and several papers, including two letters and two vehicle registration documents, identifying Nazari's address as 4912 Harmon Avenue, a residence located near the efficiency apartment.

The jury found Nazari guilty of possession with intent to deliver a controlled substance, namely cocaine, in an amount of four grams or more but less than 200 grams. During the punishment phase, the State presented evidence of two prior felony offenses, and Nazari was sentenced to eighteen years' imprisonment. He appeals, arguing that the evidence is legally and factually insufficient to sustain the conviction.

---

[3] Nazari's counsel argued that the numbers on the "tally sheet" and notebook were also consistent with scores for games such as Yahtzee or gin rummy.

**STANDARD OF REVIEW**

The Texas Court of Criminal Appeals recently abrogated the factual sufficiency standard of review. The court held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is no meaningful distinction between the factual sufficiency standard of review and the legal sufficiency standard of review, *id*. at 895; both apply the standard set forth in *Jackson v. Virginia*. 443 U.S. 307, 319 (1979). Accordingly, we analyze Nazari's arguments under the *Jackson* standard. *See id*.; *Brooks*, 323 S.W.3d at 895.

In reviewing the sufficiency of the evidence to support a conviction, we view all evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. It is the responsibility of the factfinder to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences. *Id*. The trier of fact is the sole judge of the weight and credibility of the evidence, and we may not substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must presume that the factfinder resolved any conflicting inferences in favor of the conviction. *Jackson*, 443 U.S. at 326. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence may be as probative as direct evidence in establishing the guilt of an actor. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

**DISCUSSION**

To prove possession of a controlled substance with intent to deliver, the State must establish beyond a reasonable doubt that Nazari: (1) possessed a controlled substance in the amount

4

alleged; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. Tex. Health & Safety Code Ann. §§ 481.002(38), 481.112(a) (West 2010); *see also King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). Nazari argues on appeal that the State did not prove the first and second elements of the offense. Rather, Nazari contends, the State "proved nothing more than [that] the appellant was present at the time the search warrant was executed."

### *Possession*

To establish possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant exercised care, custody, control, or management over the contraband. Tex. Health & Safety Code Ann. § 481.002(38). When the defendant is not in exclusive possession of the place where the contraband is found, his knowledge or control over the contraband cannot be established unless additional independent facts and circumstances affirmatively link him to the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). It is not enough to show that Nazari was merely present in the vicinity of the controlled substance; the State must show additional links between Nazari and the contraband. *Id.*

There are many factors by which a defendant may be sufficiently linked to the contraband, including: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee;

5

(8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd). These factors are "simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession.' They are not a litmus test." *Id*. (citing *Brown v. State*, 911 S.W.2d 744, 745 (Tex. Crim. App. 1995)).

The number of links is not dispositive, rather it is the logical force of all the evidence, direct and circumstantial, which establishes possession. *Id*. Nazari argues that the evidence is insufficient to support his conviction because a number of the factors set out in *Figueroa* are absent in this case. A court, however, should not focus on the absence of affirmative links, but rather should consider the logical force of links that are present. *Hurtado v. State*, 881 S.W.2d 738, 745 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Here, several factors link Nazari to the contraband found, particularly the 13.55 grams of cocaine found in the toilet. First, Nazari was present inside the residence when it was searched. Nazari was also seen coming out of the bathroom where 13.55 grams of cocaine sat in plain view inside the toilet bowl. Furthermore, approximately fifteen to twenty seconds passed between the officers' knock and their breach of the apartment. Shafer testified that according to his training and experience, "numerous subjects, upon a knock-and-announce search warrant, will try to discard or

6

destroy evidence, basically the toilet being a very good method." He also stated that Nazari's actions were consistent with someone attempting to destroy evidence by flushing it down the toilet. Additionally, after the cocaine was found, Detective Shafer told Nazari that "it didn't all go down" and Nazari sighed in response. This circumstantial evidence works to create a strong inference that Nazari attempted to flush the cocaine down the toilet. Furthermore, other drugs and drug paraphernalia were also found in the apartment, along with Nazari's personal items, including a photograph and several letters. These facts together create a sufficient logical force that would allow a reasonable jury to find possession of the 13.55 grams of cocaine beyond a reasonable doubt.

### Intent to Deliver

As with possession, intent to deliver may be proven by circumstantial evidence. *Gonzales v. State*, 761 S.W.2d 809, 815 (Tex. App.—Austin 1989, pet. ref'd). Factors that may be considered in determining intent to deliver include the nature of the location of the defendant's arrest, the quantity of drugs possessed, the manner in which the drugs are packaged, the presence or absence of drug paraphernalia indicating use or sale, whether the defendant possessed a large amount of cash, and defendant's status as a drug user. *Reed v. State*, 158 S.W.3d 44, 48-49 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Possession of multiple types of drugs and attempts by the defendant to evade arrest may also be used to prove intent to deliver. *See Moreno v. State*, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (considering appellant's failure to stop for police as part of intent analysis); *Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.) (considering appellant's possession of three kinds of drugs as part

of intent analysis). The number of factors is less important than the logical force the factors have in establishing the elements of the offense. *Moreno*, 195 S.W.3d at 326.

Possession of a large quantity of drugs alone can be legally sufficient evidence to show an intent to deliver when accompanied by expert testimony of a law enforcement officer that the quantity at issue indicates an intent to deliver. *See Reed*, 158 S.W.3d at 49 (holding evidence is legally sufficient in light of expert testimony that liquid codeine seized from appellant was large amount typically not for personal use); *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995) (noting that "intent to deliver may be inferred from the quantity of drugs possessed"), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997).

In the present case, the jury heard testimony from Shafer that the totality of the circumstances indicated an intent to deliver. Furthermore, another Austin police officer, Shane Woodward, testified that "the amount of narcotics seized[] are indicative to me of somebody who manufactures and distributes narcotics." In addition to the 13.55 grams of cocaine in the toilet, approximately twenty rocks (4.27 grams) of crack cocaine, a number of prescription pills, and another .95 grams of crack cocaine were found elsewhere in the apartment. Shafer testified that individual users usually purchase only a few crack rocks at a time and that the number of crack rocks seized was substantially larger than what would be consistent with a user. Instead, the drugs seized were consistent with drug dealing. Equipment commonly used for the manufacture of crack cocaine from cocaine powder and which contained traces of cocaine was also found in the apartment. Additionally, police found a paper identified by Shafer as a "tally sheet" used to record sales of crack cocaine.

Nazari argues that certain judicially recognized factors were absent: he was not under the influence of any drugs at the time of the search, he possessed no drugs on his person when arrested, he offered no resistance to arrest, he made no furtive gestures, there was little evidence that Nazari owned or possessed the apartment, and no large amount of money was found in the apartment. Nazari also identifies possible innocent explanations for much of the State's evidence against him. While conflicting evidence and testimony may exist, it is the factfinder's role to judge the weight and credibility of the evidence and resolve any conflicts. *Dewberry*, 4 S.W.3d at 740. The only test we may apply is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We conclude that a rational trier of fact could have found beyond a reasonable doubt that Nazari exhibited an intent to deliver.

## CONCLUSION

Because the evidence is sufficient to support the jury's finding that Nazari possessed between four and 200 grams of cocaine with an intent to deliver, we affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Justices Jones, Pemberton and Henson

Affirmed

Filed: January 21, 2011

Do Not Publish

9