**Affirmed and Memorandum Opinion filed December 31, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00400-CR

**ELADIO CASTRO NAJERA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1396108**

## M E M O R A N D U M   O P I N I O N

Appellant Eladio Castro Najera was convicted of possessing less than one gram of cocaine. Appellant raises two issues on appeal.[1] In his first issue,

---

[1] Appellant also raised a third issue complaining that the trial court failed to prepare and file findings of fact and conclusions of law as required by Article 38.22 of the Code of Criminal Procedure. We abated the appeal and ordered the trial court to make the required findings and conclusions. The trial court subsequently made findings of fact and conclusions of law based on the issues raised at trial and filed them with this Court. Therefore, appellant's third issue is moot.

appellant asserts that the trial court abused its discretion when it admitted into evidence State's Exhibits 4 and 5, a police evidence envelope and three small baggies of cocaine, over his chain-of-custody objection. We overrule this issue because (1) there was no affirmative evidence of tampering or impropriety; and (2) the State introduced evidence to establish the beginning and the end of the chain of custody. As a result, any gaps in the chain of custody go toward the weight to be given the evidence, not its admissibility.

In his second issue, appellant argues that the trial court erred when it denied his request for an instruction to the jury under Article 38.22, section 6 of the Texas Code of Criminal Procedure regarding the voluntariness of an oral statement he made during his arrest. We overrule this issue because the evidence did not raise an issue regarding the voluntariness of appellant's confession. We therefore affirm the judgment.

## BACKGROUND

Houston police officer Marcus Wilson was working the night shift when he heard the sound of a car collision behind him, on Telephone Road. Wilson approached the scene of the accident and observed a white Chevrolet Tahoe at the back of a multi-vehicle collision. Wilson believed the Tahoe had caused the collision when it rear-ended the car in front of it, beginning a chain reaction accident that ultimately involved four vehicles.

Wilson got out of his patrol car to begin his accident investigation when he heard people yelling "he's leaving." Wilson saw the Tahoe back up and drive away from the scene. Wilson got back into his patrol car, turned on his car's emergency lights and siren, and began pursuing the Tahoe. Wilson requested back-up and continued pursuing the Tahoe onto Loop 610. Wilson and other officers then followed the Tahoe onto Interstate 45. The Tahoe eventually stopped

2

in a lane of traffic on Interstate 45.

Wilson and the other officers initiated a felony traffic stop. Wilson ordered the driver out of the Tahoe while he and eight or nine other officers had their guns drawn. The driver—appellant—exited the Tahoe and Wilson ordered him to back toward the officers with his hands raised. Appellant complied, and Wilson handcuffed him. According to Wilson, appellant was cooperative at all times, he followed directions, and Wilson handled appellant alone from that point. Wilson then moved appellant back behind Wilson's patrol car where Wilson conducted a search of appellant's person, finding three small baggies of a white powdery substance in a pocket of appellant's pants. Wilson, without saying anything, showed appellant the baggies. According to Wilson, appellant then said that "he got it at the club, Alafys." During appellant's trial, Wilson explained that Alafys was a club located a short distance away from the scene of the multi-vehicle collision.

After completing his search of appellant, Wilson placed appellant in the patrol car and locked the three baggies into the patrol car's center console lockbox. Wilson then returned to the scene of the accident. Wilson field-tested the white powder, and the result showed that the powder was presumptively cocaine. After clearing the accident scene, Wilson transported appellant to the Houston Police Department central jail.

Having delivered appellant to the jail, Wilson testified that he next took the three baggies to the narcotics division located in the same building. Narcotics personnel weighed the white powder. Wilson filled out appellant's charges and "the narcotics paperwork for tagging purposes." This paperwork included filling out an evidence envelope (State's Exhibit 4) by marking it with the unique case number, placing the three baggies inside a larger bag, placing that bag inside the

3

evidence envelope and sealing it, and then initialing and dating the envelope. Wilson testified that a narcotics intake officer took the envelope from Wilson, verified it with the charges, and placed the envelope into a narcotics division storage lockbox where it would remain until it was transferred to the police laboratory.

Brittany Thomas was the Houston Forensic Science Center criminalist in the controlled substance section who received the sealed evidence envelope prepared by Wilson from centralized evidence receiving. Thomas testified that she initially checked to verify that the envelope was sealed. According to Thomas, if the envelope had not been sealed, she would have refused to accept it. Thomas testified that this verification is standard procedure to maintain the integrity of the evidence. Thomas then checked the submission form against the itemized inventory on the envelope to verify that it matched. She then opened the envelope, in which she found three baggies of white powder suspected to be cocaine. Thomas marked each baggie with the case number and her initials. Thomas then performed two separate tests on the white powder and determined that the white powder was cocaine. Once Thomas had completed her analysis, she resealed and initialed the envelope, which then was returned to storage. On the day of appellant's trial, Wilson retrieved the envelope from police laboratory storage and personally brought it to the courtroom.

Appellant testified during his trial. According to appellant, he stopped his vehicle on the shoulder of Interstate 610, not in a lane of traffic on Interstate 45. Appellant also testified that two police officers—not nine—ordered him out of his vehicle at gunpoint. Appellant went on that he felt "kind of unsafe" when the police were pointing their guns at him. Appellant also denied that Wilson was the officer who arrested him, denied that the officer who did search him found any

4

cocaine in his possession, and denied seeing any baggies of cocaine that night. Finally, appellant testified that he was not aware that he had been charged with possession of a controlled substance until after he was released from jail on his hit and run conviction.

The jury found appellant guilty of possession of a controlled substance, namely cocaine, weighing less than one gram. The trial court sentenced appellant to two years in prison, probated to five years of community supervision, and imposed a $250 fine. This appeal followed.

## ANALYSIS

### I. The trial court did not abuse its discretion in admitting the cocaine despite possible gaps in the chain of custody because there was no evidence of impropriety.

In his first issue, appellant argues that the trial court abused its discretion when it admitted into evidence State's Exhibits 4 and 5, an evidence envelope and the cocaine. In support, appellant points to Thomas's testimony that she did not know: (1) where the evidence had been or who had handled it prior to the moment she received the sealed envelope containing the evidence in the police crime laboratory; or (2) who had handled the evidence or whether it had been tampered with or altered after she tested it. Appellant also asserts that Wilson could not identify the evidence envelope, and that Wilson testified he had not placed the marks on the cocaine baggies and did not know who did. In appellant's view, this evidence demonstrates that the State did not establish a proper chain of custody, and the trial court abused its discretion when it overruled his objection to the admission of the evidence. We disagree.

The sufficiency of an evidentiary predicate is within the trial court's discretion, and we will affirm the judgment unless the trial court abused that

discretion. *Reed v. State*, 158 S.W.3d 44, 52 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *Smith v. State*, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984)). Objections regarding theoretical or speculative breaches in the chain of custody go to the weight of the evidence rather than to its admissibility unless there is affirmative evidence of impropriety. *Caddell v. State*, 123 S.W.3d 722, 727 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997)). The State, therefore, is not required to provide a moment-by-moment account of the whereabouts of evidence from the moment it is seized until it is introduced at trial. *Reed*, 158 S.W.3d at 52. The State instead must prove only the beginning and the end of the chain of custody. *Id.*

Appellant has not demonstrated that the trial court abused its discretion when it overruled his chain-of-custody objection. Thomas's testimony pointed out by appellant is not affirmative evidence of a breach in the chain of custody. It is instead the type of speculative or theoretical evidence of a breach that goes to the weight of the evidence, not its admissibility. *See Caddell*, 123 S.W.3d at 727.

Contrary to appellant's contention, Wilson did identify State's Exhibit 4 as the evidence envelope that he filled out and into which he placed the three baggies of cocaine he found in appellant's pocket. Wilson also identified State's Exhibit 5 as the evidence bag into which he placed the three baggies of cocaine he found in appellant's pocket. Although Wilson could not testify regarding who had written the case number on the baggies, he positively identified them as the three baggies of cocaine he had seized from appellant and delivered to the narcotics division storage pending transfer to the police laboratory.

In addition to Wilson's testimony recounting his handling of the baggies of cocaine, Thomas testified that (1) State's Exhibit 4 was the sealed evidence

6

envelope that she received from central evidence; (2) she opened the envelope; (3) she removed State's Exhibit 5; and (4) she found three baggies of cocaine inside. Thomas further testified that she wrote the case number on each individual baggie. This evidence is sufficient to establish the beginning and the end of the chain of custody. *See Reed*, 158 S.W.3d at 52. Because the State introduced evidence establishing the beginning and the end of the chain of custody, we hold the trial court did not abuse its discretion when it overruled appellant's objection and admitted the cocaine into evidence.

Appellant cites *Easley v. State*, 472 S.W.2d 128 (Tex. Crim. App. 1971), in support of his argument that the State did not establish the chain of custody for the cocaine. Appellant points out that, in *Easley*, (1) the arresting officer had placed no identifying marks on the marijuana at issue in that case and could not positively identify the marijuana during the defendant's trial; (2) the marijuana had been mailed to Austin for testing but someone in Austin had forwarded the marijuana to a Dallas laboratory for testing; (3) the Dallas chemist who received the envelope containing the marijuana could not testify that the envelope had not been opened prior to receipt; and (4) there was no testimony or other evidence about what had happened to the envelope in Austin. *Id.* at 129. The Court of Criminal Appeals held that based on the combination of these circumstances, the State had not established a proper chain of custody and reversed Easley's conviction. *Id.* Appellant argues that the gaps in the chain of custody here are similar to those in *Easley*, and as a result, we should reverse.

We disagree that the facts of this case are similar to those in *Easley*. Here, both Wilson and Thomas positively identified State's Exhibits 4 and 5. Wilson testified that Exhibit 4 was the evidence envelope he filled out and Exhibit 5 was the evidence bag into which he placed the three baggies of cocaine prior to sealing

7

them inside Exhibit 4. Wilson had previously field-tested the substance in the baggies, and the results were positive for cocaine. During his trial testimony, Wilson positively identified the three baggies as those he had seized from appellant. Although Wilson could not identify who had written the case number on the individual baggies, Thomas subsequently testified that she had written the numbers. Thomas also testified that Exhibit 4 was still sealed when she received it and that the seal she had placed on Exhibit 5 at the conclusion of her analysis was still sealed when she testified during appellant's trial. Further, there was no evidence that State's Exhibits 4 and 5 were in the control of unknown persons at any time. For those reasons, *Easley* does not support reversal here.

Having determined that the trial court did not abuse its discretion when it admitted State's Exhibits 4 and 5 into evidence, we overrule appellant's first issue.[2]

## II. Appellant was not entitled to a general voluntariness instruction because the voluntariness of his statement was not litigated during trial.

In his second issue, appellant argues that the trial court erred when it refused to include in the jury charge a voluntariness instruction pursuant to Article 38.22, section 6 of the Code of Criminal Procedure. We conclude that the trial court did not err because the evidence at trial did not raise the voluntariness of appellant's statement that he had gotten the cocaine at a club.

When reviewing claims of jury-charge error, we use a two-step process. First, we determine whether error actually exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Then, if error exists, we determine

---

[2] Because we have determined that the trial court did not abuse its discretion when it admitted State's Exhibits 4 and 5 into evidence, we need not address appellant's contention in his first issue that because the cocaine should not have been admitted into evidence, the evidence is legally insufficient to support his conviction.

whether it is harmful using the framework outlined in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984); s*ee Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

A trial judge has the absolute duty to prepare a jury charge that accurately sets out the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2005); *Oursbourn v. State*, 259 S.W.3d 159, 179–80 (Tex. Crim. App. 2008). When a rule or statute requires an instruction under the particular circumstances, that instruction is the law applicable to the case, and the trial court must instruct the jury on whatever the statute or rule requires. *Oursbourn*, 259 S.W.3d at 180.

A defendant's statement may be used as evidence against him if it appears that the statement was freely and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21. Article 38.22, section 6 of the Code of Criminal Procedure governs the admissibility of an accused's custodial and non-custodial statements. This section becomes the law applicable to the case once a question is raised and actually litigated as to the general voluntariness of an accused's statement. *Aldaba v. State*, 382 S.W.3d 424, 429 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

The ordinary sequence of events contemplated by Section 6 is that: (1) a party or the trial judge raises a question sua sponte whether the defendant's statement was voluntary; (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the statement was voluntary; (4) if the trial judge decides the statement was voluntarily made, it will be admitted into evidence and the defendant may offer evidence before the jury suggesting that the statement was not, in fact, voluntary; (5) if such evidence is offered before the jury, the trial judge then must give the jury a general voluntariness instruction.

9

*Oursbourn*, 259 S.W.3d at 175. To be entitled to a Section 6 instruction, a defendant must first "actually litigate" the issue of voluntariness before the trial court by completing the first three steps listed above. *Morales v. State*, 371 S.W.3d 576, 583 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Oursbourn*, 259 S.W.3d at 175). The defendant then must introduce some evidence before the jury that would enable the jury to find that the facts, disputed or not, rendered the defendant unable to make a voluntary statement. *Id.* A general voluntariness instruction must be given if a reasonable jury, viewing the totality of the circumstances, could have found that the statement was not voluntarily made. *Id.* The ultimate question is whether the suspect's will was overborne. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).

In this case, Officer Wilson testified that he showed appellant the three baggies of cocaine once he removed them from appellant's pocket. Wilson then testified that appellant told him that he had gotten the drugs at a club. Appellant objected to the admission of the statement pursuant to "38.22, 38.23, and hearsay." The trial court overruled appellant's objections and admitted the statement into evidence. Appellant did not request a hearing outside of the jury's presence on the question of the voluntariness of his statement. At the charge conference, appellant requested a jury instruction under Article 38.22 because the statement was not recorded or written. The trial court denied the requested instruction.

The trial court subsequently made findings of fact and conclusions of law. The trial court found, among other things, that (1) "Wilson showed [appellant] the three baggies without making any statements to the defendant;" (2) appellant "volunteered that 'he got [the baggies] at the club [Alafys];'" (3) Wilson and the other officers "did not coerce or threaten [appellant] to make him give a statement regarding the drugs;" (4) Wilson was a credible witness; and (4) appellant was not

10

a credible witness. The trial court's conclusions of law included the determination that (1) "Wilson's act of showing [appellant] the bags of cocaine was not interrogation or the functional equivalent of interrogation;" and (2) appellant's statement that he got the drugs at the club was voluntary.

Appellant does not argue on appeal that he was entitled to a general voluntariness instruction due to a disability. Appellant instead argues that he was entitled to an instruction because he was detained in a felony traffic stop by multiple police officers, in multiple patrol cars, who ordered him out of his vehicle at gunpoint. Appellant asserts that, based on this evidence, the jury could have concluded that his statement was made in the grip of the use of deadly force and Wilson's actions required him to respond.

The State argues that appellant did not raise an Article 38.22, section 6 challenge to the voluntariness of his statement because he did not inform the trial court that his objection was based on a contention that appellant's statement was involuntary. We need not decide whether appellant adequately raised the issue with the trial court outside the presence of the jury because, even if he did, we conclude that the evidence he points to in the trial record does not raise a voluntariness issue. *See Oursbourn*, 259 S.W.3d at 174–76 (stating that no error results from refusing to include a jury instruction about the voluntariness of a statement under Article 38.22 when the evidence does not raise a voluntariness issue); *Miniel v. State*, 831 S.W.2d 310, 317 (Tex. Crim. App. 1992) ("Only when some evidence is presented that a confession is not voluntary is the matter put in issue.").

Appellant argues that the evidence set out above would enable a reasonable jury, viewing the totality of the circumstances, to have found that his statement was involuntary because his will was overborne as a result of the police officers' use of

their weapons during the initial stages of his arrest. Appellant did testify that he felt "unsafe" when the officers' guns were pointed at him. The evidence is uncontradicted, however, that the only time the officers had their guns pointing at appellant was when he exited the vehicle and backed toward them. After that, the only evidence in the record is that appellant was cooperative and that a single officer handcuffed and searched him. There is no evidence in the record that the officers mistreated appellant or threatened him in any way, or that Wilson or any other officer was pointing a weapon at appellant during the search.

Appellant also did not testify that he was in such a state of fear for his life as a result of the officers pointing their weapons at him that he did not give the statement voluntarily. *See Cornealius v. State*, 870 S.W.2d 169, 175 (Tex. App.—Houston [14th Dist.] 1994), *aff'd*, 900 S.W.2d 731 (Tex. Crim. App. 1995) ("A confession will not be considered involuntary absent police coercion causally related to the confession."). Instead, appellant denied that the officers found baggies of cocaine that night and also denied making a statement regarding buying the cocaine at a club. We conclude that the record does not contain evidence that would have permitted the jury to conclude that appellant's statement was not voluntary. As a result, Article 38.22, section 6 never became the law applicable to the case. *See Von Byrd v. State*, 569 S.W.2d 883, 894 (Tex. Crim. App. 1978) (holding that there was no evidence that the defendant's confession was involuntary as a result of investigating officer's course of conduct); *Watts v. State*, 371 S.W.3d 448, 464–65 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Without any evidence that the statements were made involuntarily, we cannot say that article 38.22 ever became the law applicable to the case."). We overrule appellant's second issue on appeal.

## CONCLUSION

12

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.


/s/ J. Brett Busby
Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).