Motion for Rehearing Overruled; Memorandum Opinion of July 15, 2008
Withdrawn; Affirmed and Substituted Memorandum Opinion filed September 11, 2008








 

Motion
for Rehearing Overruled; Memorandum Opinion of July 15, 2008 Withdrawn;
Affirmed and Substituted Memorandum Opinion filed September 11, 2008.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-07-00410-CR

____________

 

MAURICE RACHAL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 344th
District Court

Chambers County, Texas

Trial Court Cause No. 13628

 



 

S U B S T I T U T E D   M E M O R A N D U M   O P I N I O N

We withdraw the memorandum opinion issued July 15, 2008,
and substitute the following opinion in its place.

Appellant, Maurice Rachal, appeals from his conviction for
possession with intent to deliver four hundred or more grams of cocaine.  In
five issues, appellant challenges the legal and factual sufficiency of the
evidence and contends the trial court erred in denying his motion to preclude
impeachment.  We affirm.








I.  Background

Around 9:00 p.m. on February 13, 2005, Trooper Rhyan Droddy
stopped a Chevrolet Trailblazer on Interstate 10 in Chambers County, Texas. 
The Trailblazer was towing a lowboy trailer carrying a 1984 GMC pickup truck. 
Trooper Droddy initiated the traffic stop because the trailer license plate was
secured in such a manner that the entire plate could not be read and because
the vehicle was traveling over the speed limit.  

Appellant was driving, and Jermaine Phillips was the
passenger.  After asking appellant to step out of the vehicle and Phillips to
remain in the vehicle, Trooper Droddy questioned the men separately.  In
response to Trooper Droddy=s inquiries, Phillips stated that he had
recently purchased the truck and that his cousin had rented the Trailblazer,
but no rental agreement was present.  Phillips did not know appellant=s last name, but
only knew appellant as AReecy,@ even though he
told Trooper Droddy that appellant was a long-term friend who lived down the
road.  Phillips claimed that they were taking the truck to Baton Rouge to have
wiring and rear-end work done.  When Trooper Droddy questioned appellant,
appellant said that the truck belonged to a friend of a cousin.  Appellant
identified Phillips as his cousin and claimed he was someone appellant had
known all his life.  Appellant gave Phillips=s last name as ACampbell@ instead of APhillips.@  Appellant said
the truck=s engine had supposedly caught fire and that they were
taking the truck to Baton Rouge for engine work.  Appellant told Trooper Droddy
that he was a truck driver, but a license check revealed that appellant=s license had been
suspended.  Trooper Droddy testified that appellant seemed nervous and answered
questions about his name and address without a thought, but that he responded
with a pause and a Ahuh@ when asked about
the vehicles and the trip.  








Because he was suspicious of criminal activity, Trooper
Droddy sought and obtained permission from Phillips to search the Trailblazer
and the truck.  There was no luggage in either vehicle, but lug wrenches in the
back of the Trailblazer led Trooper Droddy to suspect something was hidden in
the tires of the truck.  It started to rain, and Phillips agreed to move the
Trailblazer to a nearby covered gas station.  To facilitate further inspection
of the tires, a wrecker truck was used to hoist the truck into the air.  Upon
raising the truck, Deputy Tony Viator, who had been called in to assist Trooper
Droddy, noticed that while the underside of the truck was extremely dirty, the
oil and transmission pans appeared to have been wiped down.  Deputy Viator
testified that several bolts were missing from the pans and that the area was
very clean.  Although the truck was old and beat up, Deputy Viator testified
that someone had obviously gotten underneath, loosened the oil and transmission
pans, cleaned them up, and put them back on the truck. 

Trooper Droddy requested permission from Phillips to move
the Trailblazer, trailer, and truck to a nearby auto shop.  When Phillips would
neither give permission nor deny it, Trooper Droddy called in a police dog
trained to detect the odor of controlled substances.  After the dog Aalerted@ to the truck,
Trooper Droddy decided to move the Trailblazer and truck to the auto shop.  At
the auto shop, two packages wrapped in duct tape were discovered inside the oil
pan of the truck.  Suspecting that the packages contained a controlled
substance, Trooper Droddy placed appellant and Phillips under arrest.  

A video camera mounted in the patrol car recorded the
entire traffic stop and was later admitted into evidence.  After being
arrested, appellant and Phillips were left alone in the police car while the
officers finished their investigation.  The video camera continued to record
during this time, and while appellant and Phillips are not in the camera=s line of sight,
the camera recorded their conversation.  At one point, Phillips said, AI know we should
have put some oil in the pan,@ and AI knew when we got
to the shop we were f---ed.@  Appellant did not respond to either
statement.  Although
portions of the audio tape are difficult to decipher, it appears that on the way to the
police station, Phillips told Trooper Droddy, AIt=s my action.  I
take full responsibility.  It=s my action.@  At trial, both
Officer Droddy=s testimony and the video showed that at the time of
the arrest appellant denied having any knowledge of the packages in the oil
pan.  








The packages were fifty-eight percent cocaine by weight and
weighed 1.99 kilograms.  Sergeant Brian Nichols testified that 1.99 kilograms
of cocaine, when sold in bulk on the street in Houston, had a value of $15,000
per kilogram.  However, if broken down into individual doses, the street value
would increase to approximately $100,000 per kilogram.  Sergeant Nichols
testified the cocaine could be further diluted to increase the quantity,
conceivably raising the value to $400,000 per kilogram.  According to Sergeant
Nichols, 1.99 kilograms of cocaine is not an amount intended for personal use,
and someone transporting that amount definitely intended to distribute the
cocaine for profit.  Sergeant Nichols also testified that because most
narcotics coming into the United States are brought across the border from
Mexico into the Houston area, Houston is considered a hub city.  Once in
Houston, the larger loads are broken down into smaller quantities for
distribution and then transported to other cities such as Baton Rouge. 

The jury found appellant guilty of possession with intent
to deliver four hundred grams or more of cocaine and the trial court sentenced
him to thirty years in prison.  This appeal followed.

II.  Sufficiency of the Evidence

A.  Standard of
Review

Appellant contends the evidence is legally and factually
insufficient to support his conviction.  In reviewing a legal sufficiency
challenge, we view the evidence in the light most favorable to the verdict and
determine whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Salinas v. State, 163
S.W.3d 734, 737 (Tex. Crim. App. 2005).  We accord great deference A>to the
responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996) (quoting Jackson v.
Virginia, 443 U.S. 307, 319 (1979)).  We presume that any conflicting
inferences from the evidence were resolved by the jury in favor of the
prosecution, and we defer to that resolution.  See Jackson, 443 U.S. at
326.  








In evaluating the factual sufficiency of the evidence, we
view all the evidence in a neutral light and will set aside the verdict only to
prevent manifest injustice.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006).  We apply a two prong test to determine whether there is some
objective basis for finding that (1) the evidence in support of the jury=s verdict,
although legally sufficient, is nevertheless so weak that the verdict seems
clearly wrong and unjust, or (2) in considering conflicting evidence, the
verdict, albeit legally sufficient, is nevertheless against the great weight
and preponderance of the evidence.  Id. at 414B15.  Although a
factual sufficiency review authorizes an appellate court to act in the capacity
of a so‑called Athirteenth juror,@ due deference
must be accorded the fact finder=s determinations,
particularly those determinations concerning the weight and credibility of the
evidence.  See id. at 416B17; Johnson v.
State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).








Appellant was charged both as a principal and under the law
of parties with possession with intent to deliver.  To prove the offense of
possession of a controlled substance as a principal actor, the State was
required to show that appellant (1) exercised actual care, control, and
management over the controlled substance and (2) was conscious of his
connection with the controlled substance and knew what it was.  See Tex. Health & Safety Code Ann. __ 481.002(38),
481.112(a) (Vernon 2003 & Supp. 2007); Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995).  To convict under the law of parties, the
State must show appellant acted with the intent to promote or assist the
offense by soliciting, encouraging, directing, aiding, or attempting to aid the
other person in the commission of the offense.  Tex. Penal Code Ann. _ 7.02(a)(2) (Vernon 2003). 
Accordingly, proving possession of a controlled substance as a party requires showing
that (1) another person possessed the contraband and (2) with the intent that
the offense be committed, appellant solicited, encouraged, directed, aided, or
attempted to aid the other=s possession.  Woods v. State, 998
S.W.2d 633, 636 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d).  For
conviction, either as principal or as a party to the offense, the State must
show knowledge of the presence of the controlled substance.  See Tex. Health & Safety Code Ann. _ 481.115(a)
(Vernon 2003).  The evidence used to prove these elements can either be direct
or circumstantial.  Brown, 911 S.W.2d at 747. 

Control over contraband may be exercised jointly by more
than one person.  See Martin v. State, 753 S.W.2d 384, 386 (Tex. Crim.
App. 1988).  However, mere presence where a controlled substance is being
possessed by others does not, by itself, support a finding that a person is a
party to an offense.  See Evans v. State, 202 S.W.3d 158, 162 (Tex.
Crim. App. 2006).  The State must establish that the defendant=s connection to
the controlled substance was more than just fortuitous.  Id. at 161. 
Presence or proximity, when combined with either direct or circumstantial
evidence, may be sufficient to establish actual care or control of the
controlled substance beyond a reasonable doubt.  Id. at 162. 

B.  Possession

In his first and second issues, appellant contends the
evidence was legally and factually insufficient to show that he possessed the
cocaine or was a party to possessing the cocaine.  The court=s charge
authorized the jury to convict appellant either as a principal or as a party to
possession with intent to deliver more than four hundred grams of cocaine.  The
jury returned a general verdict finding appellant guilty.  When, as here,
alternative theories of committing the same offense are charged and the jury
returns a general guilty verdict, the verdict stands if the evidence supports
any of the theories charged.  See Brooks v. State, 990 S.W.2d 278, 283
(Tex. Crim. App. 1999).  Thus, we will first apply the legal and factual
sufficiency standards of review to the evidence of appellant=s guilt as a
party.








Because appellant was not in exclusive possession of the
vehicle where the contraband was found, the State must affirmatively link
appellant to the contraband.  Brown, 911 S.W.2d at 748.  Texas courts
have summarized a non-exclusive list of potential links establishing a person=s possession of
contraband: (1) the defendant=s presence when a search is conducted, (2)
whether the contraband was in plain view, (3) how close and accessible the
drugs were to the defendant, (4) whether the defendant was under the influence
of narcotics when arrested, (5) the defendant=s possession of
other contraband or narcotics when arrested, (6) any incriminating statements
the defendant made when arrested, (7) whether the defendant made furtive
gestures or attempted to flee, (8) any odor of contraband, (9) the presence of
other contraband or drug paraphernalia, (10) the defendant=s ownership or
right to possess the place where the drugs were found, (11) whether the place
where the drugs were found was enclosed, (12) the defendant=s possession of a
large amount of cash, and (13) any conduct by the defendant indicating a
consciousness of guilt.  See Evans, 202 S.W.3d at 162 n.12; Olivarez
v. State, 171 S.W.3d 283, 291 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  We have also recognized the presence of a large
quantity of contraband as a factor affirmatively linking an appellant to the
contraband.  Id at 291-92.

The question, therefore, is whether the evidence is
sufficient to show appellant knew Phillips was transporting cocaine and, with
the intent that the offense be committed, aided or attempted to aid Phillips in
exercising care, custody, or control over the cocaine.  See Tex. Penal Code Ann. _ 7.02(a)(2); Woods,
998 S.W.2d at 636 (stating that evidence must show another person possessed
contraband and appellant, with intent that offense be committed, solicited,
encouraged, directed, aided, or attempted to aid other=s possession). 
Appellant argues the evidence is insufficient because this case lacks several
of the above links: the cocaine was recovered from a place that was neither in
close proximity to nor convenient to appellant, appellant was not found with a
large amount of cash or other controlled substances on his person, there was no
odor of drugs, no drug paraphernalia was found, appellant=s physical
condition did not indicate recent consumption of cocaine, appellant made no
furtive gestures or effort to flee, and no fingerprints or other special
connection were found to link appellant to knowledge of the cocaine. 








Though as appellant points out, only the
large-quantity-of-the-contraband factor was present here, it is the logical
force of all the evidence, direct and circumstantial, that is dispositive.  Evans,
202 S.W.3d at 162.  While appellant also presents arguments based on the latter
standard, those arguments do not show that the evidence was insufficient to
support appellant=s conviction.  Appellant was driving the
Trailblazer when Trooper Droddy initiated the traffic stop.  Appellant claimed
to be a truck driver, yet his driver=s license had been
suspended.  The Trailblazer had been rented by a third, unknown party, and no
rental agreement was present.  Although appellant and Phillips both claimed to
reside in Houston, a city with numerous auto repair shops, they were using a
rented vehicle to haul a twenty-year-old truck in extremely poor condition to
Baton Rouge, for repairs, at 9:00 at night.  The men were destined to arrive in
Baton Rouge around 1:00 in the morning, a time when most repair shops are
closed, yet neither brought an overnight bag or personal necessities. 
Moreover, they were driving a well-known drug distribution route from a hub
city.  Trooper Droddy testified that appellant seemed nervous and hesitated
when asked questions pertaining to the trip and the truck.  Appellant and
Phillips contradicted each other on important details: (1) appellant claimed
Phillips was his cousin whom he had known all his life, but Phillips said
appellant was a friend who lived down the street, (2) appellant said a friend
of a cousin owned the truck, but Phillips claimed to have recently purchased
the truck, and (3) appellant said the truck=s engine had
supposedly caught fire and needed work, but Phillips stated the truck needed
wiring and rear-end work.  Phillips did not know appellant=s last name, and
appellant incorrectly said Phillips=s last name was ACampbell.@  Appellant
attempted to show that he may have simply been confused about Phillips=s last name by
offering testimony that Phillips=s aunt was named
Campbell.  However, it is within the province of the jury to decide what weight
to give contradictory testimonial evidence, and the jury may have chosen to
disbelieve his explanation.  See Cain v. State, 958 S.W.2d 404, 408B09 (Tex. Crim.
App. 1997).  In addition, the State points out that both appellant and Phillips
demonstrated a willingness to help as long the search focused on the tires. 
But when Trooper Droddy suggested moving the Trailblazer and truck to a place
where the truck could be lifted so as to access the underside, appellant did
not offer any further help or assistance. 








Appellant=s silence in the face of Phillips=s incriminating
statements, made while appellant and Phillips were alone in the police car, is
also significant.  Throughout their recorded conversation, appellant
periodically responded to Phillips=s comments and
remarks.  However, when Phillips said, AI knew when we got
to the shop we were f---ed,@ and AI know we should
have put some oil in the pan,@ appellant did not respond to either
statement.  These statements clearly implicated appellant in commission of the
offense by assuming appellant=s knowledge of and participation in
concealing and transporting the cocaine.  As the fact finder, the jury is free
to draw reasonable inferences and make reasonable deductions from the evidence,
as presented within the context of the crime.  Price v. State, 227
S.W.3d 264, 266 (Tex. App.CHouston [1st Dist.] 2007, pet. dism=d).  Given the
context, Phillips=s remarks are the type of comments that a
reasonable person could be expected to deny or refute if untrue.  The jury
could therefore have reasonably inferred from appellant=s silence that he
knew about the cocaine in the oil pan and was assisting Phillips in concealing
and transporting it.  See Paredes v. State, 129 S.W.3d 530, 535B36 (Tex. Crim.
App. 2004) (holding that appellant=s silence while
codefendant described to a third person how he and appellant had murdered three
people indicated appellant=s adoption of the statements); Alvarado
v. State, 912 S.W.2d 199, 214B15 (Tex. Crim.
App. 1995) (allowing admission of accomplice=s statements
because by his silence, defendant acquiesced to statements including him in
commission of murder); Bean v. State, No. 14-96-01112-CR, 1998 WL
161477, at *2 (Tex. App.CHouston [14th Dist.] Apr. 9, 1998, no
pet.) (not designated for publication) (finding appellant=s silence in face
of co-defendant=s statement that they had Ajust kicked the
s--- out of [someone]@ qualified as an admission); see also
Elizondo v. State, No. 14‑98‑00493‑CR, 2000 WL 330093, at
*1 (Tex. App.CHouston [14th Dist.] Mar. 30, 2000, pet. ref=d) (not designated
for publication) (noting that interpreting silence as an adoptive admission is based
on theory that the normal human reaction would be to deny such a statement if
it were untrue).








At trial, appellant offered an alternative explanation for
his lack of response to Phillips=s incriminating
statements.  The entire stop took place over almost three hours, and much of
that time appellant and Phillips were off to one side by themselves.  During
this time, appellant contends that Phillips had ample opportunity to advise him
about the cocaine hidden in the oil pan, and thus he was not surprised by
Phillips=s statements.  In
support of this, appellant points to Phillips=s willingness to
take complete responsibility and argues that Phillips engineered the entire
operation and that appellant was simply an unknowing participant. 
Reconciliation of conflicts in the evidence is within the exclusive province of
the jury.  See Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996).  The jury watched the videotape, observed appellant=s and Phillips=s behavior, and
heard Phillips=s statements to appellant.  As the sole judge of the
weight and credibility given to witness testimony, the jury could have chosen
to disregard appellant=s explanation and Phillips=s statements
claiming responsibility.  See id. 








Viewing the evidence in the light most favorable to the
verdict, we conclude that the factors linking appellant to knowledge of the
cocaine and the logical inferences that may reasonably be drawn from these
factors together provide sufficient evidence to establish beyond a reasonable
doubt that appellant was a party to possessing the cocaine.[1] 
See Salinas, 163 S.W.3d at 737; see also Robinson v. State, 174
S.W.3d 320, 329B30 (Tex. App.CHouston [1st
Dist.] 2005, pet. ref=d) (finding evidence legally sufficient to
show possession where appellant was passenger in truck, two kilograms of
cocaine were found in truck, passengers and driver gave conflicting stories,
truck contained no luggage for overnight trip, and loaded firearm was found in
vehicle); Gipson v. State, No. 14‑01‑00760‑CR, 2002 WL
31318610, at *2 (Tex. App.CHouston [14th Dist.] Oct. 17, 2002, pet.
ref=d) (not designated
for publication) (holding evidence was legally sufficient to show knowing
possession where cocaine was found in backseat, appellant was nervous, and
appellant and driver gave conflicting testimony about trip, their relationship,
and appellant=s occupation); Fields v. State, 932 S.W.2d 97,
104 (Tex. App.CTyler 1996, pet. ref=d) (holding
evidence was legally sufficient to establish possession where appellant had possession
of and was a passenger in rented vehicle, drugs were found under hood of car,
car occupants gave conflicting stories, and appellant carried inadequate
personal items for stated trip). 

Further, when viewed in a neutral light, the circumstantial
evidenceCthe implausible
nature of appellant=s story, the contradictory statements, the
volume of cocaine involved, and the logical inference from Phillips=s statements that
the men were working togetherCleads to the conclusion that appellant
knew about the cocaine.  It was therefore reasonable for the jury to find that
appellant was a party to helping Phillips possess and exercise control over the
cocaine.  We conclude that the verdict is not so against the great weight and
preponderance of the evidence as to be manifestly unjust, and the proof of
guilt is not so weak as to undermine confidence in the jury=s determination.  See
Watson, 204 S.W.3d at 414B15; see also Deyon v. State, No.
01-03-00775-CR, 2005 WL 3005493, at *4 (Tex. App.CHouston [1st Dist.]
Nov. 10, 2005, no pet.) (mem. op., not designated for publication) (concluding
evidence appellant exercised control over cocaine was factually sufficient
despite absence of several linking factors); Robinson, 174 S.W.3d at 330
(concluding evidence was factually sufficient to prove possession because jury
was free to resolve conflicting views of evidence in favor of prosecution).  We
overrule appellant=s first and second issues.

C.  Intent to
Deliver








In his third and fourth issues, appellant claims the
evidence is legally and factually insufficient to show that assuming he
possessed the cocaine, he did so with the intent to deliver.  Intent to deliver
may be shown by circumstantial evidence, including expert testimony by
experienced law enforcement officers.  Reed v. State, 158 S.W.3d 44, 48B49 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).  As additional evidence of intent,
courts have considered factors such as the nature of the location of the
defendant=s arrest, the quantity of narcotics the defendant
possessed, the manner of packaging of the narcotics, the presence or absence of
drug paraphernalia, the defendant=s possession of a
large amount of cash, and his status as a narcotics user.  Id.

Several of the factors showing intent to deliver were
present in this case.  Appellant was arrested while traveling from Houston to
Baton Rouge on Interstate 10, a well-known drug distribution route.  Sergeant
Nichols testified that two kilograms of cocaine was not an amount intended for
personal use.  See Robinson, 174 S.W.3d at 331 (finding two kilograms of
cocaine was in excess of typical amount possessed for personal use).  Sergeant
Nichols stated that in the Houston area, a person transporting or traveling
with that amount of cocaine was definitely intending to distribute it for
profit.  No drug paraphernalia for use of the cocaine was found in the truck or
on appellant=s person.  See Mack v. State, 859 S.W.2d 526,
529 (Tex. App.CHouston [1st Dist.] 1993, no pet.) (finding that
absence of paraphernalia supported inference that cocaine was intended for
delivery rather than consumption).  Sergeant Nichols also testified that when
broken down for individual use, the street value of the cocaine would be
approximately $100,000 per kilogram, or up to $400,000 per kilogram if further
diluted.[2] 
See id. at 528, 529 (holding 8.9 grams of crack cocaine, valued at $600,
was a sufficient amount from which to infer an intent to deliver). 








Viewing all this evidence in the light most favorable to
the verdict, we conclude that the jury could have found beyond a reasonable
doubt that appellant intended to deliver or aid in the delivery of the two
kilograms of cocaine.  See Salinas, 163 S.W.3d at 737; Utomi v. State,
243 S.W.3d 75, 83 (Tex. App.CHouston [1st Dist.] 2007, pet. ref=d) (finding evidence
legally sufficient to show intent to deliver where police recovered 35 grams of
crack cocaine with approximate street value of $3,500 from apartment where
appellant was sleeping, no paraphernalia for personal consumption of cocaine
was found, and appellant was not lessee of apartment).  After examining all the
evidence neutrally, we further conclude that the proof of appellant=s guilt was not so
obviously weak as to undermine confidence in the jury=s determination,
nor was the contradictory evidence so strong that the standard of proof beyond
a reasonable doubt could not have been met.  See Watson, 204 S.W.3d at
414B15; Robinson,
174 S.W.3d at 331B32 (holding evidence was factually
sufficient to support verdict on intent to deliver, despite no evidence showing
appellant knew about drug trade).  We overrule appellant=s third and fourth
issues.

III.  Impeachment with Prior Convictions

In his fifth issue, appellant claims the trial court erred
in denying his motion to preclude the State from impeaching him with his prior
convictions.  The trial court denied appellant=s motion with
respect to two prior felony convictions for burglary, a misdemeanor conviction
for assault, and a misdemeanor conviction for failure to identify.  After jury
voir dire, the trial court indicated it might change its ruling with regard to
the misdemeanor assault.  Appellant chose not to testify.  Here, appellant
argues the trial court erred in denying his motion because the prior
convictions were either outside the ten year time limit or were not necessarily
crimes of moral turpitude.  See Tex.
R. Evid. 609.  The State responds that appellant failed to preserve
error with respect to this issue.








To preserve error on a trial court=s ruling allowing
the State to impeach a defendant with prior convictions, the defendant must
have actually testified.  Caballero v. State, 919 S.W.2d 919, 923 (Tex.
App.CHouston [14th
Dist.] 1996, writ ref=d); see also Luce v. United States,
469 U.S. 38, 41, 43 (1984) (holding that a defendant must actually testify to
preserve error on improper impeachment under Federal Rule of Evidence 609(a)). 
Without a factual record of the defendant=s testimony, a
reviewing court would be speculating if it attempted to weigh the probative
value of the proffered testimony against its prejudicial effect.  See
Caballero, 919 S.W.2d at 923.  The alleged harm would also be speculative
because the trial court could change the previous ruling and prohibit the
impeachment, or the prosecutor might decide not to use the prior conviction.  Id. 
Accordingly, because appellant chose not to testify, we hold that he failed to
preserve this complaint for appellate review.  See Jackson v. State, 992
S.W.2d 469, 479B80 (Tex. Crim. App. 1999) (holding
appellant who did not testify waived complaint about trial court=s refusal to limit
State=s ability to cross
examine him on prior offenses); Caballero, 919 S.W.2d at 923 (holding
defendant=s decision to not testify waived error regarding trial
court=s ruling allowing
State to impeach defendant with prior convictions).  We overrule appellant=s fifth issue.

We affirm the trial court=s judgment.

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Substituted Memorandum Opinion filed September 11, 2008.

Panel consists of
Justices Yates, Guzman, and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Appellant cites Roberson v. State in support of his argument
that the factors present in this case do not sufficiently link him to knowledge
of the cocaine and participation as a party in control of the cocaine. See
Roberson v. State, 80 S.W.3d 730, 735B42 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d).  However, Roberson is
distinguishable because none of the parties to the offense in that case made
incriminating statements.  





[2]  Appellant relies on Turner v. State, 681 S.W.2d 849, 850 (Tex.
App.CDallas 1984, writ ref=d), and Welch v. State, 680
S.W.2d 834, 836 (Tex. App.CHouston [1st Dist.] 1984, writ struck), in arguing that because the
facts are just as consistent with the inference that appellant possessed the
drugs for personal use as they are with the inference that he possessed them
for distribution, the evidence was insufficient to show intent to deliver. 
However, the Court of Criminal Appeals has explicitly overruled the Aoutstanding reasonable hypothesis@ test, upon which Turner and
Welch relied, as a means of reviewing the sufficiency of the evidence.  See
Geesa v. State, 820 S.W.2d 154, 155, 159B61 (Tex. Crim. App. 1991).  We therefore find appellant=s reliance on these cases
misplaced.