

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00331-CR

| | | |
|---|---|---|
| Robby Lee Jamison | § | From the 371st District Court |
| | § | of Tarrant County (1225740D) |
| v. | § | February 14, 2013 |
| | § | Opinion by Justice Meier |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgments. It is ordered that the judgments of the trial court are affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Bill Meier



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00331-CR

ROBBY LEE JAMISON                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                                      STATE

----------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

The State indicted Appellant Robby Lee Jamison for the offense of possession of a controlled substance, namely cocaine of four grams or more, but less than two hundred grams, with the intent to deliver and for the offense of possession of a controlled substance, namely cocaine of four grams or more, but less than two hundred grams. Jamison moved to suppress evidence seized from

---

[1]See Tex. R. App. P. 47.4.

his "person and from a secondary location where [he] had an expectation of privacy" on the grounds that his rights under the Fourth Amendment to the United States Constitution; article 1, section 9 of the Texas constitution; and article 18.01 of the Texas Code of Criminal Procedure were violated. The trial court denied the motion, and after a bench trial, the trial court found Jamison guilty of both counts. Jamison brings three points on appeal. Jamison argues that the trial court erred by denying his motion to suppress because (1) the police entered and searched his residence pursuant to an invalid warrant and (2) the police illegally detained him and transported him from his vehicle to his home during the execution of the warrant. In his third point, Jamison also argues that the evidence is insufficient to support his convictions. We will affirm.

## II. BACKGROUND

On September 23, 2010, a magistrate found that probable cause existed to support the issuance of a search warrant for a residence located at 7312 Madeira Drive, Fort Worth, Texas. The magistrate based his probable-cause determination on the affidavit of Fort Worth Police Department Officer Jonas Ceja. Ceja's affidavit recited that he had met with a "creditable, reliable informant (CI)"[2] who informed him that "they" could purchase crack cocaine from the

---

[2]The affidavit does recite "creditable" instead of "credible." At the suppression hearing, among numerous hypertechnical attacks levied against the affidavit, Jamison argued that Ceja failed to recite that his confidential informant was "credible." Ceja responded that he had. Jamison argued, "No, you said creditable. Do you know what creditable means? C-R-E-D-I-T-A-B-L-E? Do you know what that means?" Jamison also attacked other misspellings in the

3

Madeira Drive residence.[3]  The CI informed Ceja that a "'Robbie Jamison' . . . a black male approximately 30 to 32 years of age, heavy set weighing 230 to 250 pounds and being 6'00" to 6'2" tall" lived at the residence with a female named "Ashley" and that Jamison was the resident who sold the crack cocaine.

Ceja averred that after learning this information, he conducted two controlled buys from the Madeira Drive residence using the CI.  Ceja stated that on both controlled buys, he searched the CI prior to and after the buys to ensure "no evidence was withheld."  Ceja stated that presumptive tests indicated the substances purchased were cocaine.  Ceja further stated that the CI had said that a "substantial" amount of cocaine existed in the Madeira Drive residence.  Ceja also averred that he had used "police records" to learn that a "Robby Lee Jamison" and an "Ashley Curry" were associated with the Madeira Drive residence.  Ceja also said that Jamison's driver license information showed Jamison to be a black male, 5'11" tall, weighing 236 pounds.  Using police

affidavit, venturing that misspellings like "by" instead of "buy," and "whey" instead of "when" somehow destroyed the trustworthiness of the affidavit as a whole. The trial court's ruling indicates that, like the magistrate who issued the warrant, it was not confused by these misspellings.

[3]Citing safety reasons, the affidavit specifically states that Ceja is intending to keep the identity of his CI undisclosed.  At the suppression hearing, and on appeal, Jamison argued that Ceja was intentionally misleading the magistrate by using the pronouns "they" and "them" for the CI.  Jamison also professed confusion over the colloquial use of these pronouns as non-gender identifying pronouns.  At one point, despite numerous objections from the State and multiple statements by the trial court that there were not "two" CIs described in the affidavit, Jamison questioned Ceja at length about "two" CIs.

4

photos from a previous arrest, Ceja averred that he showed Jamison's picture to the CI and that the CI identified the picture as Jamison. The affidavit also recites that Jamison had a prior criminal history and that his computerized criminal history showed outstanding misdemeanor warrants in Tarrant County, Texas, and a "Possession of Cocaine charge from Colorado." The affidavit was sworn to on the same date the magistrate issued the warrant.

After setting up surveillance in anticipation of executing the warrant on September 24, 2010, Ceja saw Jamison leave the Madeira Drive residence in his vehicle. By Ceja's account, he observed Jamison fail to use his turn signal, and Ceja radioed to another officer to execute a stop of Jamison and to arrest him for the traffic violation. Police then escorted Jamison to the Madeira Drive residence and executed the search warrant. In its findings of fact and conclusions of law, the trial court found that in a recorded conversation, Jamison willingly indicated that he would accompany officers to execute the search warrant on his residence. Inside the kitchen of the Madeira Drive residence, officers discovered over ninety-seven grams of cocaine. Ultimately, the trial court found Jamison guilty of both charges and assessed punishment at nine years' incarceration for the delivery charge and five years' incarceration for the possession charge, with the sentences to run concurrently. This appeal followed.

### III. DISCUSSION

#### A.     Ceja's Affidavit and the Validity of the Search Warrant

In his first point, Jamison argues that Ceja's affidavit supporting the search warrant was deficient because it "contained false allegations, did not establish that the informant was credible and reliable, and the affiant failed to corroborate the facts alleged in the affidavit." Jamison further argues that the information alleged in the affidavit was conclusory. The State argues that the affidavit stated adequate probable cause. We agree with the State.

A search warrant may not legally issue unless it is based on probable cause. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 1.06 (West 2005). When reviewing a trial court's decision on a motion to suppress, we normally use a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer to the trial court's determination of historical fact or questions of mixed fact and law when they involve credibility determinations. *Id.* But we review de novo the application of law to the facts, or mixed questions that do not turn on the determination of credibility. *Id.* As to search warrants, however, both appellate courts and trial courts alike must give great deference to a magistrate's implicit finding of probable cause. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011). The issuing magistrate's determination of probable cause will be sustained if the magistrate had a substantial basis for concluding that a search

6

would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983).

When reviewing a magistrate's determination, we should interpret the affidavit in a "commonsensical and realistic" manner, recognizing that the magistrate may draw reasonable inferences. *McLain*, 337 S.W.3d at 271 (quoting *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007)). When in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id.* A "grudging or negative attitude" by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331. Whether the facts alleged in a probable-cause affidavit sufficiently support a search warrant is determined by examining the totality of the circumstances. *Id.* at 230–31, 103 S. Ct. at 2328. A search warrant is supported by probable cause when the facts set out within the "four corners" of the affidavit are "sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

Jamison's arguments invite us to scrutinize numerous discrete parts of the affidavit and to find each deficient so that the affidavit as a whole cannot support the magistrate's probable-cause finding. But even Jamison admits that we are not to analyze the affidavit in a "hyper-technical manner." *See McLain*, 337 S.W.3d at 271. Yet Jamison has asked this court to do just that. Using twenty-

five pages of briefing, Jamison attacks the affidavit line by line and paragraph by paragraph, pointing out, much like he did at the suppression hearing, misspellings, typos, the affiant's attempts to keep the anonymity of the CI safeguarded, and what he describes as "intentionally vague statements and statements made recklessly and without corroboration or verification of their validity."

The proper inquiry for reviewing courts, including this court and the trial court, is whether, under the totality of the circumstances, there are sufficient facts, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *Id.* at 272; *Rodriguez*, 232 S.W.3d at 62. The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus instead on the combined logical force of facts that are in the affidavit. *Rodriguez*, 232 S.W.3d at 62. If in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded warrants. *Lopez v. State*, 535 S.W.2d 643, 647 (Tex. Crim. App. 1976) (citing *United States v. Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 746 (1965)).

Here, the affidavit reflects that Ceja received a tip that crack cocaine was being sold out of the Madeira Drive residence. Ceja used police records to identify that Jamison resided at the residence and that Jamison matched the

description given by the CI. Further, the affidavit reflects that the CI verified that the person in a police photo of Jamison was the same person residing at the residence who was selling crack cocaine. On two separate occasions, Ceja used the CI, whom he describes as credible and reliable, to effectuate two controlled buys—both times confirming by presumptive drug testing that the substance purchased from the residence was crack cocaine. The last controlled buy occurred within forty-eight hours of the issuance of the warrant. Based on the totality of these facts and the inferences drawn from them, we conclude that the affidavit supported the magistrate's probable-cause finding. *See State v. Griggs*, 352 S.W.3d 297, 300, 304 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding that affidavit reciting affiant received tip from "credible and reliable" informant, coupled with a controlled buy of alleged narcotics, sufficient to establish probable cause that narcotics would exist at residence); *see also Profet v. State*, No. 01-97-00588-CR, 1999 WL 318811, at *1 (Tex. App.—Houston [1st Dist.] May 20, 1999, no pet.) (not designated for publication) (holding that affidavit, which stated that officer's conducting a single controlled buy, coupled with informant's description of defendant, was sufficient to support probable-cause determination). We hold that the trial court did not err by finding that Ceja's affidavit contained sufficient facts to justify a conclusion that a search of Jamison's residence would probably uncover cocaine on the premises. *See McLain*, 337 S.W.3d at 271. We overrule Jamison's first point.

## B.    The Traffic Stop

In his second point, Jamison argues that he was illegally detained by the police when, after he was pulled over, he was escorted back to his residence while police executed the search warrant; thus, Jamison argues that "the trial court erred by denying [his] Motion to Suppress."  In his motion to suppress, Jamison argued that "certain items were allegedly removed from [his] person and from a secondary location where [he] had an expectation of privacy."  As the State points out, Jamison never identifies what he is actually seeking to suppress.  Indeed, Jamison's motion did not identify what evidence he wanted suppressed, nor, as far as we can discern from the record, was such evidence identified at the suppression hearing.  It could be argued that under these circumstances, the trial court could have properly denied Jamison's motion to suppress as inadequate.  *See Amador v. State*, 275 S.W.3d 872, 874 n.3 (Tex. Crim. App. 2009) (reasoning that failure to identify specific evidence desired to be suppressed in motion to suppress supports trial court's determination to deny the motion).

But this court detects a larger problem with Jamison's second point. Jamison has failed to point to any authority that stands for the proposition that evidence discovered pursuant to a valid search warrant of one's residence is to be suppressed because an alleged illegal detention related to a traffic stop at a separate location occurred.  This seems to be an argument that has no relationship or nexus to the evidence used to convict Jamison; namely, the

cocaine discovered in the Madeira Drive residence pursuant to a valid search warrant. *See Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S. Ct. 407, 417 (1963) (explaining that question to be asked in determining whether evidence should be suppressed under "fruit of the poisonous tree" doctrine is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint"). Even assuming that Jamison is correct that he was illegally detained when officers stopped him in his vehicle and then transported him back to his residence, the discovery of cocaine at Jamison's residence by means of a valid search warrant is a sufficiently distinguishable means of discovering the cocaine to purge any potential taint related to the traffic stop. *Id.* We conclude that the trial court did not err by overruling Jamison's motion to suppress, and we overrule his second point.

### C.    Sufficiency of the Evidence

In his third point, Jamison argues that the evidence is "legally and factually insufficient to connect [him] to the residence and the contraband that was found in the residence." Thus, Jamison challenges only that he possessed the cocaine found at the Madeira Drive residence. We conclude that the evidence is sufficient to support the trial court's determination that Jamison possessed the cocaine found in the residence.

11

### 1. Standard of Review

The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 912.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

### 2. Possession

A person possesses an object if he has actual care, custody, control, or management of that object. Tex. Health & Safety Code Ann. § 481.002(38) (West 2010). When drugs are found, the connection to the drugs must be more than fortuitous, and to this end, Texas courts utilize a links rule that is designed to protect innocent bystanders from conviction merely because of their proximity to someone else's drugs. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim.

12

App. 2006).  Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control.  But presence or proximity, when combined with other evidence, direct or circumstantial, may be sufficient. *Id.*

Some of the links that may establish possession include:  (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  It is not the number of links that is dispositive but, rather, the logical force of all of the evidence, direct and circumstantial.  *Evans*, 202 S.W.3d at 162.

The evidence in this case establishes sufficient links that raise reasonable inferences of Jamison's knowledge and control of the cocaine.[4] After officers arrested Jamison for the traffic violation, he willingly accompanied Officer Bolger back to the Madeira Drive residence. Bolger testified that it did not appear that the residence had many occupants, and he also testified that Jamison's personal belongings were found "[t]hroughout the house, but mainly the back bedroom." Bolger also found "personal paperwork" belonging to Jamison in the residence. The logical force of this evidence is that it was Jamison's residence. Furthermore, once at the residence and while officers executed the search warrant, Jamison directed officers to the cocaine that was found in the kitchen. The logical force of this evidence is that Jamison had accessibility to the cocaine. *See Reed v. State*, 158 S.W.3d 44, 47–48 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (reasoning that defendant's knowledge that codeine was in the trunk of his vehicle was a factor linking him to codeine found therein). Also, in the audio recording of an exchange between Bolger and Jamison when he was

---

[4]The State did not reintroduce much of the evidence presented during the suppression hearing again at the bench trial. *See Cruz v. State*, 657 S.W.2d 850, 850 (Tex. App.—Texarkana 1983, no pet.) ("If there had been a jury trial on the merits, the State would be required to prove its case without benefit of the evidence introduced in the pretrial hearing. . . . the State should not be required to do the same when the trier of fact is the trial judge.") We have analyzed this point of error using only the evidence introduced during the trial, which excludes evidence introduced at the suppression hearing further linking Jamison to the cocaine—namely, Ceja's testimony that he had established through police records that Jamison lived at the Madeira Drive residence and Ceja's testimony that he performed two controlled buys through a confidential informant from the residence and by a person named Robby Jamison.

arrested for the traffic violation, Jamison admitted that he lived at the Madeira Drive residence with his girlfriend "Ashley" and that there would be cocaine found in the house.[5] The logical force of these incriminating statements is that Jamison had actual care, custody, and control over the cocaine found in the residence. *See Olivarez*, 171 S.W.3d at 291. Viewing the evidence in the light most favorable to the verdict, we conclude that the factfinder could have found that Jamison possessed the cocaine found at the Madeira Drive residence. *See Wilson v. State*, No. 01-02-01002-CR, 2004 WL 213388, at *3 (Tex. App.—Houston [1st Dist.] Feb. 5, 2004, pet. ref'd) (mem. op., not designated for publication) ("Appellant admitted to owning the house where the drugs were

---

[5]Even though Jamison introduced the audio recording of his and Bolger's conversation for the limited purpose of taking Bolger on voir dire, at points in the trial, the State, Jamison, and the trial court all treated the audio as if it had been introduced into evidence; thus, we include it in our evidentiary sufficiency analysis. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (reasoning that Texas courts have held that documents or items in some way made part of the trial record which are treated by the court and parties as if formally introduced into evidence are properly considered by the factfinder on the merits of the case). Furthermore, without briefing the point, citing any authority, or analyzing why, Jamison argues that his statement about living at the Madeira Drive residence was made prior to his being given *Miranda* warnings. But Jamison made statements establishing that the Madeira Drive residence was his home prior to and after officers gave him *Miranda* warnings. Even assuming Jamison is correct that the statements were illegally obtained in violation of his right against self-incrimination, in our sufficiency review, we consider all evidence, even evidence illegally obtained and improperly introduced. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (reasoning that a reviewing court must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a sufficiency review).

found and led officers to locations inside his house where narcotics were found.").  We overrule Jamison's third point.

## IV. CONCLUSION

Having overruled all three of Jamison's points, we affirm the trial court's judgments.

BILL MEIER
JUSTICE

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 14, 2013