02-11-331-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00331-CR

 

 









 
 
 Robby
 Lee Jamison
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 371st District
 Court
  
 of
 Tarrant County (1225740D)
  
 February
 14, 2013
  
 Opinion
 by Justice Meier
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgments.  It is ordered that the judgments of
the trial court are affirmed.

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

 

By_________________________________

   
Justice Bill Meier

 

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00331-CR

 

 


 
 
 Robby Lee Jamison
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 371st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

The
State indicted Appellant Robby Lee Jamison for the offense of possession of a
controlled substance, namely cocaine of four grams or more, but less than two
hundred grams, with the intent to deliver and for the offense of possession of
a controlled substance, namely cocaine of four grams or more, but less than two
hundred grams.  Jamison moved to suppress evidence seized from his “person and
from a secondary location where [he] had an expectation of privacy” on the
grounds that his rights under the Fourth Amendment to the United States
Constitution; article 1, section 9 of the Texas constitution; and article 18.01
of the Texas Code of Criminal Procedure were violated.  The trial court denied
the motion, and after a bench trial, the trial court found Jamison guilty of
both counts.  Jamison brings three points on appeal.  Jamison argues that the
trial court erred by denying his motion to suppress because (1) the police
entered and searched his residence pursuant to an invalid warrant and (2) the
police illegally detained him and transported him from his vehicle to his home
during the execution of the warrant.  In his third point, Jamison also argues
that the evidence is insufficient to support his convictions.  We will affirm.

II.  Background

On
September 23, 2010, a magistrate found that probable cause existed to
support the issuance of a search warrant for a residence located at 7312
Madeira Drive, Fort Worth, Texas.  The magistrate based his probable-cause determination
on the affidavit of Fort Worth Police Department Officer Jonas Ceja.  Ceja’s
affidavit recited that he had met with a “creditable, reliable informant (CI)”[2]
who informed him that “they” could purchase crack cocaine from the Madeira
Drive residence.[3]  The CI informed Ceja
that a “‘Robbie Jamison’ . . . a black male approximately
30 to 32 years of age, heavy set weighing 230 to 250 pounds and being 6’00” to
6’2” tall” lived at the residence with a female named “Ashley” and that Jamison
was the resident who sold the crack cocaine.

Ceja
averred that after learning this information, he conducted two controlled buys
from the Madeira Drive residence using the CI.  Ceja stated that on both
controlled buys, he searched the CI prior to and after the buys to ensure “no
evidence was withheld.”  Ceja stated that presumptive tests indicated the
substances purchased were cocaine.  Ceja further stated that the CI had said
that a “substantial” amount of cocaine existed in the Madeira Drive residence. 
Ceja also averred that he had used “police records” to learn that a “Robby Lee
Jamison” and an “Ashley Curry” were associated with the Madeira Drive
residence.  Ceja also said that Jamison’s driver license information showed
Jamison to be a black male, 5’11” tall, weighing 236 pounds.  Using police
photos from a previous arrest, Ceja averred that he showed Jamison’s picture to
the CI and that the CI identified the picture as Jamison.  The affidavit also
recites that Jamison had a prior criminal history and that his computerized
criminal history showed outstanding misdemeanor warrants in Tarrant County,
Texas, and a “Possession of Cocaine charge from Colorado.”  The affidavit was
sworn to on the same date the magistrate issued the warrant.

After
setting up surveillance in anticipation of executing the warrant on September 24,
2010, Ceja saw Jamison leave the Madeira Drive residence in his vehicle.  By
Ceja’s account, he observed Jamison fail to use his turn signal, and Ceja
radioed to another officer to execute a stop of Jamison and to arrest him for
the traffic violation.  Police then escorted Jamison to the Madeira Drive
residence and executed the search warrant.  In its findings of fact and
conclusions of law, the trial court found that in a recorded conversation,
Jamison willingly indicated that he would accompany officers to execute the
search warrant on his residence.  Inside the kitchen of the Madeira Drive
residence, officers discovered over ninety-seven grams of cocaine.  Ultimately,
the trial court found Jamison guilty of both charges and assessed punishment at
nine years’ incarceration for the delivery charge and five years’ incarceration
for the possession charge, with the sentences to run concurrently.  This appeal
followed.

III.  Discussion

A.      Ceja’s Affidavit and the Validity of
the Search Warrant

In his first point, Jamison argues that
Ceja’s affidavit supporting the search warrant was deficient because it
“contained false allegations, did not establish that the informant was credible
and reliable, and the affiant failed to corroborate the facts alleged in the
affidavit.”  Jamison further argues that the information alleged in the
affidavit was conclusory.  The State argues that the affidavit stated adequate
probable cause.  We agree with the State.

A
search warrant may not legally issue unless it is based on probable cause.  U.S.
Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art.
1.06 (West 2005).  When reviewing a trial court’s decision on a motion to
suppress, we normally use a bifurcated standard of review.  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We defer to the trial court’s
determination of historical fact or questions of mixed fact and law when they
involve credibility determinations.  Id.  But we review de novo the
application of law to the facts, or mixed questions that do not turn on the
determination of credibility.  Id.  As to search warrants, however, both
appellate courts and trial courts alike must give great deference to a
magistrate’s implicit finding of probable cause.  State v. McLain, 337
S.W.3d 268, 271–72 (Tex. Crim. App. 2011).  The issuing magistrate’s
determination of probable cause will be sustained if the magistrate had a
substantial basis for concluding that a search would uncover evidence of
wrongdoing.  Illinois v. Gates, 462 U.S. 213, 236, 103 S. Ct. 2317,
2331 (1983).

When
reviewing a magistrate’s determination, we should interpret the affidavit in a “commonsensical
and realistic” manner, recognizing that the magistrate may draw reasonable
inferences.  McLain, 337 S.W.3d at 271 (quoting Rodriguez v. State,
232 S.W.3d 55, 61 (Tex. Crim. App. 2007)).  When in doubt, we defer to all
reasonable inferences that the magistrate could have made.  Id.  A
“grudging or negative attitude” by reviewing courts toward warrants is inconsistent
with the Fourth Amendment’s strong preference for searches conducted pursuant
to a warrant.  Gates, 462 U.S. at 236, 103 S. Ct. at 2331.  Whether
the facts alleged in a probable-cause affidavit sufficiently support a search
warrant is determined by examining the totality of the circumstances.  Id.
at 230–31, 103 S. Ct. at 2328.  A search warrant is supported by probable
cause when the facts set out within the “four corners” of the affidavit are
“sufficient to justify a conclusion that the object of the search is probably
on the premises to be searched at the time the warrant is issued.”  Davis v.
State, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

Jamison’s
arguments invite us to scrutinize numerous discrete parts of the affidavit and to
find each deficient so that the affidavit as a whole cannot support the
magistrate’s probable-cause finding.  But even Jamison admits that we are not
to analyze the affidavit in a “hyper-technical manner.”  See McLain, 337
S.W.3d at 271.  Yet Jamison has asked this court to do just that.  Using twenty-five
pages of briefing, Jamison attacks the affidavit line by line and paragraph by
paragraph, pointing out, much like he did at the suppression hearing,
misspellings, typos, the affiant’s attempts to keep the anonymity of the CI
safeguarded, and what he describes as “intentionally vague statements and statements
made recklessly and without corroboration or verification of their validity.”

The
proper inquiry for reviewing courts, including this court and the trial court,
is whether, under the totality of the circumstances, there are sufficient
facts, coupled with inferences from those facts, to establish a “fair
probability” that evidence of a particular crime will likely be found at a
given location.  Id. at 272; Rodriguez, 232 S.W.3d at 62.  The
issue is not whether there are other facts that could have, or even should
have, been included in the affidavit; we focus instead on the combined logical
force of facts that are in the affidavit.  Rodriguez, 232 S.W.3d at 62.  If
in a particular case it may not be easy to determine when an affidavit
demonstrates the existence of probable cause, the resolution of doubtful or
marginal cases in this area should be largely determined by the preference to
be accorded warrants.  Lopez v. State, 535 S.W.2d 643, 647 (Tex. Crim. App.
1976) (citing United States v. Ventresca, 380 U.S. 102, 109, 85 S. Ct.
741, 746 (1965)).

Here,
the affidavit reflects that Ceja received a tip that crack cocaine was being
sold out of the Madeira Drive residence.  Ceja used police records to identify
that Jamison resided at the residence and that Jamison matched the description
given by the CI.  Further, the affidavit reflects that the CI verified that the
person in a police photo of Jamison was the same person residing at the residence
who was selling crack cocaine.  On two separate occasions, Ceja used the CI,
whom he describes as credible and reliable, to effectuate two controlled buys—both
times confirming by presumptive drug testing that the substance purchased from
the residence was crack cocaine.  The last controlled buy occurred within forty-eight
hours of the issuance of the warrant.  Based on the totality of these facts and
the inferences drawn from them, we conclude that the affidavit supported the
magistrate’s probable-cause finding.  See State v. Griggs, 352 S.W.3d
297, 300, 304 (Tex. App.—Houston [14th Dist.] 2011, pet. ref’d) (holding that
affidavit reciting affiant received tip from “credible and reliable” informant,
coupled with a controlled buy of alleged narcotics, sufficient to establish
probable cause that narcotics would exist at residence); see also Profet v.
State, No. 01-97-00588-CR, 1999 WL 318811, at *1 (Tex. App.—Houston [1st
Dist.] May 20, 1999, no pet.) (not designated for publication) (holding
that affidavit, which stated that officer’s conducting a single controlled buy,
coupled with informant’s description of defendant, was sufficient to support
probable-cause determination).  We hold that the trial court did not err by
finding that Ceja’s affidavit contained sufficient facts to justify a
conclusion that a search of Jamison’s residence would probably uncover cocaine
on the premises.  See McLain, 337 S.W.3d at 271.  We overrule Jamison’s
first point.

B.      The Traffic Stop

In his second point, Jamison argues that he
was illegally detained by the police when, after he was pulled over, he was
escorted back to his residence while police executed the search warrant; thus,
Jamison argues that “the trial court erred by denying [his] Motion to
Suppress.”  In his motion to suppress, Jamison argued that “certain items were
allegedly removed from [his] person and from a secondary location where [he]
had an expectation of privacy.”  As the State points out, Jamison never
identifies what he is actually seeking to suppress.  Indeed, Jamison’s motion
did not identify what evidence he wanted suppressed, nor, as far as we can
discern from the record, was such evidence identified at the suppression
hearing.  It could be argued that under these circumstances, the trial court
could have properly denied Jamison’s motion to suppress as inadequate.  See
Amador v. State, 275 S.W.3d 872, 874 n.3 (Tex. Crim. App. 2009) (reasoning
that failure to identify specific evidence desired to be suppressed in motion
to suppress supports trial court’s determination to deny the motion).

But
this court detects a larger problem with Jamison’s second point.  Jamison has
failed to point to any authority that stands for the proposition that evidence
discovered pursuant to a valid search warrant of one’s residence is to be
suppressed because an alleged illegal detention related to a traffic stop at a
separate location occurred.  This seems to be an argument that has no
relationship or nexus to the evidence used to convict Jamison; namely, the
cocaine discovered in the Madeira Drive residence pursuant to a valid search
warrant.  See Wong Sun v. United States, 371 U.S. 471, 487–88, 83 S. Ct.
407, 417 (1963) (explaining that question to be asked in determining whether
evidence should be suppressed under “fruit of the poisonous tree” doctrine is
“whether, granting establishment of the primary illegality, the evidence to
which instant objection is made has been come at by exploitation of that
illegality or instead by means sufficiently distinguishable to be purged of the
primary taint”).  Even assuming that Jamison is correct that he was illegally
detained when officers stopped him in his vehicle and then transported him back
to his residence, the discovery of cocaine at Jamison’s residence by means of a
valid search warrant is a sufficiently distinguishable means of discovering the
cocaine to purge any potential taint related to the traffic stop.  Id. 
We conclude that the trial court did not err by overruling Jamison’s motion to
suppress, and we overrule his second point.

C.      Sufficiency
of the Evidence

In
his third point, Jamison argues that the evidence is “legally and factually
insufficient to connect [him] to the residence and the contraband that was
found in the residence.”  Thus, Jamison challenges only that he possessed the
cocaine found at the Madeira Drive residence.  We conclude that the evidence is
sufficient to support the trial court’s determination that Jamison possessed
the cocaine found in the residence.

1.       Standard of Review

The court of criminal appeals has held that
there is no meaningful distinction between the legal sufficiency standard and
the factual sufficiency standard.  Brooks v. State, 323 S.W.3d 893, 895,
912 (Tex. Crim. App. 2010) (overruling Clewis v. State, 922 S.W.2d 126,
131–32 (Tex. Crim. App. 1996)).  Thus, the Jackson standard, which is
explained below, is the “only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Id. at 912.

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v.
State, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

2.       Possession

A
person possesses an object if he has actual care, custody, control, or
management of that object.  Tex. Health & Safety Code Ann. § 481.002(38)
(West 2010).  When drugs are found, the connection to the drugs must be more
than fortuitous, and to this end, Texas courts utilize a links rule that is
designed to protect innocent bystanders from conviction merely because of their
proximity to someone else’s drugs.  Evans v. State, 202 S.W.3d 158,
161–62 (Tex. Crim. App. 2006).  Mere presence at the location where drugs are
found is insufficient, by itself, to establish actual care, custody, or
control.  But presence or proximity, when combined with other evidence, direct
or circumstantial, may be sufficient.  Id.

Some
of the links that may establish possession include:  (1) the defendant’s
presence when a search is conducted; (2) whether the contraband was in
plain view; (3) the defendant's proximity to and the accessibility of the
narcotic; (4) whether the defendant was under the influence of narcotics
when arrested; (5) whether the defendant possessed other contraband or
narcotics when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8) whether
the defendant made furtive gestures; (9) whether there was an odor of
contraband; (10) whether other contraband or drug paraphernalia were
present; (11) whether the defendant owned or had the right to possess the
place where the drugs were found; (12) whether the place where the drugs
were found was enclosed; (13) whether the defendant was found with a large
amount of cash; and (14) whether the conduct of the defendant indicated a
consciousness of guilt.  Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.—Houston
[14th Dist.] 2005, no pet.).  It is not the number of links that is dispositive
but, rather, the logical force of all of the evidence, direct and
circumstantial.  Evans, 202 S.W.3d at 162.

The
evidence in this case establishes sufficient links that raise reasonable
inferences of Jamison’s knowledge and control of the cocaine.[4]
 After officers arrested Jamison for the traffic violation, he willingly
accompanied Officer Bolger back to the Madeira Drive residence.  Bolger
testified that it did not appear that the residence had many occupants, and he
also testified that Jamison’s personal belongings were found “[t]hroughout the
house, but mainly the back bedroom.”  Bolger also found “personal paperwork”
belonging to Jamison in the residence.  The logical force of this evidence is
that it was Jamison’s residence.  Furthermore, once at the residence and while
officers executed the search warrant, Jamison directed officers to the cocaine
that was found in the kitchen.  The logical force of this evidence is that
Jamison had accessibility to the cocaine.  See Reed v. State, 158 S.W.3d
44, 47–48 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (reasoning that
defendant’s knowledge that codeine was in the trunk of his vehicle was a factor
linking him to codeine found therein).  Also, in the audio recording of an
exchange between Bolger and Jamison when he was arrested for the traffic
violation, Jamison admitted that he lived at the Madeira Drive residence with
his girlfriend “Ashley” and that there would be cocaine found in the house.[5]
 The logical force of these incriminating statements is that Jamison had actual
care, custody, and control over the cocaine found in the residence.  See Olivarez,
171 S.W.3d at 291.  Viewing the evidence in the light most favorable to the
verdict, we conclude that the factfinder could have found that Jamison
possessed the cocaine found at the Madeira Drive residence.  See Wilson v.
State, No. 01-02-01002-CR, 2004 WL 213388, at *3 (Tex. App.—Houston [1st
Dist.] Feb. 5, 2004, pet. ref’d) (mem. op., not designated for
publication) (“Appellant admitted to owning the house where the drugs were
found and led officers to locations inside his house where narcotics were
found.”).  We overrule Jamison’s third point.

IV. 
Conclusion

Having overruled all three of Jamison’s
points, we affirm the trial court’s judgments.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 14, 2013









[1]See
Tex. R. App. P. 47.4.





[2]The
affidavit does recite “creditable” instead of “credible.”  At the suppression
hearing, among numerous hypertechnical attacks levied against the affidavit,
Jamison argued that Ceja failed to recite that his confidential informant was
“credible.”  Ceja responded that he had.  Jamison argued, “No, you said
creditable.  Do you know what creditable means?  C-R-E-D-I-T-A-B-L-E? Do you
know what that means?”  Jamison also attacked other misspellings in the
affidavit, venturing that misspellings like “by” instead of “buy,” and “whey”
instead of “when” somehow destroyed the trustworthiness of the affidavit as a
whole.  The trial court’s ruling indicates that, like the magistrate who issued
the warrant, it was not confused by these misspellings.





[3]Citing
safety reasons, the affidavit specifically states that Ceja is intending to
keep the identity of his CI undisclosed.  At the suppression hearing, and on
appeal, Jamison argued that Ceja was intentionally misleading the magistrate by
using the pronouns “they” and “them” for the CI.  Jamison also professed
confusion over the colloquial use of these pronouns as non-gender identifying
pronouns.  At one point, despite numerous objections from the State and
multiple statements by the trial court that there were not “two” CIs described
in the affidavit, Jamison questioned Ceja at length about “two” CIs.





[4]The
State did not reintroduce much of the evidence presented during the suppression
hearing again at the bench trial.  See Cruz v. State, 657 S.W.2d 850,
850 (Tex. App.—Texarkana 1983, no pet.) (“If there had been a jury trial on the
merits, the State would be required to prove its case without benefit of the
evidence introduced in the pretrial hearing. . . . the
State should not be required to do the same when the trier of fact is the trial
judge.”)  We have analyzed this point of error using only the evidence
introduced during the trial, which excludes evidence introduced at the
suppression hearing further linking Jamison to the cocaine—namely, Ceja’s
testimony that he had established through police records that Jamison lived at
the Madeira Drive residence and Ceja’s testimony that he performed two
controlled buys through a confidential informant from the residence and by a
person named Robby Jamison.





[5]Even
though Jamison introduced the audio recording of his and Bolger’s conversation
for the limited purpose of taking Bolger on voir dire, at points in the
trial, the State, Jamison, and the trial court all treated the audio as if it
had been introduced into evidence; thus, we include it in our evidentiary
sufficiency analysis.  See Amador v. State, 221 S.W.3d 666, 673 (Tex.
Crim. App. 2007) (reasoning that Texas courts have held that documents or items
in some way made part of the trial record which are treated by the court and parties
as if formally introduced into evidence are properly considered by the factfinder
on the merits of the case).  Furthermore, without briefing the point, citing
any authority, or analyzing why, Jamison argues that his statement about living
at the Madeira Drive residence was made prior to his being given Miranda
warnings.  But Jamison made statements establishing that the Madeira Drive
residence was his home prior to and after officers gave him Miranda
warnings.  Even assuming Jamison is correct that the statements were illegally
obtained in violation of his right against self-incrimination, in our
sufficiency review, we consider all evidence, even evidence illegally obtained
and improperly introduced.  See Clayton v. State, 235 S.W.3d 772,
778 (Tex. Crim. App. 2007) (reasoning that a reviewing court must consider all
the evidence admitted at trial, even improperly admitted evidence, when
performing a sufficiency review).